35 So.2d 509

**ROBERTS v. ALABAMA GREAT SOUTHERN R. CO.**

6 Div. 638.

Supreme Court of Alabama.
May 20, 1948.

Taylor, Higgins, Koenig & Windham and J. Howard Perdue, Jr., all of Birmingham, for appellant.

Benners, Burr, Stokely & McKamy and Greye Tate, of Birmingham for appellee.

STAKELY, Justice.

This suit is an action brought by appellant in her capacity as administratrix of the estate of James Emory Roberts, deceased, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover for the death of appellant's intestate alleged to have been caused by the negligence of the servant, agent or employee of the appellee while the deceased was in the employ of appellee and engaged in the line of his duty in interstate commerce. Trial of the cause resulted in a verdict and judgment for the plaintiff. Upon the motion of the defendant, the court set the judgment aside upon the ground, as stated in its order, that the defendant was entitled to the affirmative charge. This appeal is from that order.

On February 12, 1945, appellant's intestate was engaged in his duties as a flagman on a freight train owned and operated by appellee. This train was engaged in transporting interstate commerce between Birmingham, Alabama, and Meridian, Mississippi. The train consisted of a locomotive, tender, fifty freight cars and a caboose. The freight cars were gondolas, hopper-bottoms, box cars and tank cars. All were loaded.

While the train was travelling at a speed of about 30 miles an hour it was struck by a tornado near Livingston, Alabama. The entire train, except the engine, tender and tank cars, was blown from the track and scattered along the right-of-way. The caboose in which plaintiff's intestate was riding with the conductor, was demolished. Both died from injuries thus received. The right side of the locomotive was lifted up from the rails. The engineer was thrown from his seat to the fireman's side of the cab. The tracks of the railroad were torn up and telephone poles and the block signal system were blown down. The roof was blown from the depot at Livingston. The path of the storm was 100 to 120 feet wide. Trees up to 12 to 14 inches in diameter were blown down.

The track upon which the train was being operated extends in a generally south-

632

westerly direction from Parker to Livingston. At or near Livingston, the track curves to the right and then extends in a generally westerly direction to a point west of Hixon where the track again curves to the right and extends in a northwesterly direction to York. About three miles west of Parker and about one mile east of Livingston is a rise in the track called a "hump" by the railroad men. From this hump the engineer on a locomotive travelling towards Livingston could see York. From Livingston to Hixon is a distance of 3.4 miles and from Hixon to York is a distance of 5.9 miles. A short distance west of Livingston the railroad track crosses Sucarnatchie Creek on a bridge.

According to the engineer the locomotive was crossing the hump when he first saw the cloud. At that time "it was just a little bit to the right of the way I was heading but it was very near in front of me." * * * "Well, it was a funnel shaped cloud, I guess you call it hanging low on the tree tops and very black around it and a kind of a light streak through the center. * * * I figured it was a cyclone or tornado or something of that kind." He had never seen a tornado or cyclone before. It was in the direction of Hixon and York, somewhere in there, when he first saw it. "It was coming across some humps back there or little hills." At that time the train was approximately a mile and three quarters from the point where the train was hit. He drew a diagram of the path and direction of the tornado. It shows its path as starting at a point north of the railroad track between York and Hixon and extending generally along and in close proximity to the track at a point a little south of Livingston. As the train moved from the hump, the engine was not making steam. It was "just rolling" about 30 miles per hour and the engineer never applied the brakes. In the opinion of the engineer when the engine was at the hump, he could have stopped the train in about 800 feet in less than a minute. The tornado did not disturb anything between the hump and the north end of the depot at Livingston. It was 2 or 3 minutes

from the time he first saw the tornado until it struck the train.

E. W. Melburn, Superintendent of Education for Sumter County and Chairman of the County Red Cross Chapter, after the tornado was over charted its path by the damage done for the United States Weather Bureau. He testified that the storm struck at York and lifted doing no damage between Hixon and Sucarnatchie Creek where the train was struck. At or near Sucarnatchie Creek it struck the Browder Place which is about ¼th mile south of the railroad track and about a mile west and south of the depot at Livingston, then it went due north to the railroad track, then easterly and along the railroad track to the depot at Livingston, then it left the railroad track going northeast.

The basis of liability under the Federal Employers' Liability Act is negligence. In this connection this court said: "The gist of this action is negligence of some sort by the railroad company or some employee of it in the scope of his duty, which proximately caused the death of Davis. There is no presumption of negligence. The evidence to sustain the claim must be of a substantial sort, more than a scintilla, and it cannot be predicated on a conjecture, or a supposition that there might have been negligence which proximately caused it. But the inference of negligence must be from a reasonable and fair interpretation of the evidence; * * *." Alabama Great Southern R. Co. v. Davis, 246 Ala. 64, 67, 18 So.2d 737, 740, certiorari denied 324 U.S. 846, 65 S.Ct. 676, 89 L.Ed. 1407.

In the recent case of Ellis v. Union Pac. R. Co., 329 U.S. 649, 67 S.Ct. 598, 600, 45 U.S.C.A. § 51, the Supreme Court of the United States said: "The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury. 45 U.S.C.A. § 51. Brady v. Southern R. Co., 320 U.S. 476, 484, 64 S.Ct. 232, 236, 88 L.Ed. 239 [245]."

It should be kept in mind that where the defendant is negligent, "the rule im-

posing liability on defendant, although another efficient cause concurs with defendant's negligence, applies where an accident or act of God is the concurring cause." Welch v. Evans Bros. Const. Co., 189 Ala. 548, 66 So. 517, 519.

These preliminary observations bring us to the vital question in this case. Was the engineer guilty of negligence in failing to act to stop the train at the hump? It is undisputed that if he had done so, the train would not have entered the area where the damage was done.

In the case of Galveston, H. & S. A. R. Co. v. Crier, 45 Tex.Civ.App. 434, 100 S. W. 1177, 1179, a brakeman of the railroad was ordered by his employer to take passage on one of its trains to a certain point in order to assist in operating one of its trains from that point. He was killed as a result of the derailment of the train on which he was riding as directed. The derailment was caused by a cyclone. The cyclone originated about 3½ miles from the point of the accident. Its width was from 250 to 400 yards. The cyclone appeared only a few minutes before it struck the train. The court said:

"Nor is there anything which tended to show that defendant's engineer and conductor were guilty of negligence in failing to stop the train before encountering the whirlwind. Had they known or had reason to believe it was impending, they had no more reason to believe that it would strike the railroad where it did than at any place along its road where the train might have been stopped. Defendant's servants operating the train might as well be charged with knowledge of where a thunderbolt would strike and be imposed with the duty of avoiding it, as to charge them with knowledge of when and where a whirlwind would arise, and the course it would take. 'There is a path which no fowl knoweth, and the vulture's eye has not seen.' 'Tis the path designed for the cyclone by him, 'the thunder of whose power none can understand.' 'A reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can foresee as probable, nor waste his time and anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in defendant's place should have foreseen as likely to happen, there is no wrong and no liability.' Webb's Pollock on Torts, 45, 46. The rule is well settled in this state that, where loss or damage is caused by the act of God, a common carrier is not liable for such loss or damage, though it may have been negligent, unless it be made to appear that there was some causal connection recognized by the law between the negligence of the defendant and the loss or damage incurred. Fentiman v. Atchison, T. & S. F. R. Co., 44 Tex.Civ.App. 455, 98 S.W. 939, and authorities cited. In the case before us there is no evidence at all of any negligence of the defendant. But if it had been shown guilty of every act charged against it as negligence, there is a total failure of proof tending to show that any such act concurred with the act of God in causing plaintiff's injury.

"As the undisputed evidence shows that plaintiff's injury was caused solely by the act of God, not contributed to by any negligence of defendant, the court erred in not peremptorily instructing a verdict in its favor. And as the case was fully developed upon the trial, and it appears from the undisputed evidence that defendant was not liable for the injuries caused plaintiff by the wreck of the train, the judgment of the district court is reversed, and judgment is here rendered in favor of the appellant."

In the case of Pierce v. Great Falls & C. Ry. Co., 22 Mont. 445, 56 P. 867, 868, a passenger sought to recover for personal injuries received as the result of a derailment of a car by windstorm. The court said: "In any aspect of the case, the appeal is without merit. We have carefully examined all the evidence contained

in the record. That the car was derailed by the force of a great and unprecedented wind was conclusively proved, and is not controverted. If the concession be made that the pleadings are sufficient to raise the question of whether or not the defendant was guilty of negligence in running through the storm, a verdict for plaintiff would not be permitted to stand; for there must be more than a mere scintilla of evidence, to justify a verdict. The evidence of negligence in the regard last mentioned (if, indeed, there is any, aside from the fact of derailment), is so slight as to be wholly insufficient to go to the jury; and the mere prima facie inference of negligence arising from the fact of derailment was met, rebutted, and overcome by the proof. The district court would not have erred in granting the nonsuit for which defendant moved at the close of the testimony. See Garver v. Lynde, 7 Mont. [108], 112, 14 P. 697; Wilson v. Southern Pac. R. Co., 62 Cal. [164] 172; McQuilken v. Central Pac. R. Co., 50 Cal. [7], 8."

In the case of McClary v. Sioux City & P. R. Co., 3 Neb. 44, 19 Am.Rep. 631, the plaintiff was injured while a passenger upon a railroad train derailed by a sudden gust of wind. The train was running ¾th hour behind schedule and advertised time. It was contended that if the train had been running on time the gust of wind would not have extended to the place where the train would have been. The court said: "The general rule is, that even a wrong-doer is liable only for the proximate consequences of his act or default, and this rule is certainly applicable to cases of mere negligence. Injuries caused only remotely by reason of negligence cannot be charged to the party in fault. It is contended in this instance that while the injury was occasioned by the act of God, yet had the train been running on time, the accident would not have occurred, therefore the negligence of the defendant in permitting the train to be three-fourths of an hour behind time, is the proximate cause of the accident."

After discussing the rule regarding the transportation of goods, and citing cases, the court concluded:

"While it was the duty of the defendant to have adopted such rules and regulations for the running of their trains, as would. insure the safety of their passengers, and having adopted them, must conform thereto as far as possible, or be responsible for the consequences resulting therefrom, yet they are responsible only for such damages as are the natural and direct result of the act complained of. Redfield on Railways (2d Ed.), § 154; Dunton v. Great Northern Ry., 34 Eng.Las Equity, 154.

"In this case the injury complained of not being the natural result of the train being behind time, is too remote to entitle plaintiff to recover."

██ Upon a careful consideration we do not see how the engineer in the case at bar can be charged with negligence. He saw the threatening cloud only 2 or 3 minutes before it struck the train. It is quite true that if he had stopped the train at the hump, the train would not have been struck and derailed. But how can it be reasonably said that the engineer should have stopped at the hump? Can it be that the engineer should have been able to predict the course of a tornado? Suppose he had stopped at the hump and the tornado lifting from its point of contact with the earth at York had struck the train at the hump? The hump was only about a mile and three-fourths from where the train was struck. Would he then have been guilty of negligence for failing to proceed? The very course which the storm in the present case took demonstrates, as shown by its path of destruction, that it is unreasonable to consider that the engineer should have been able to predict its course, especially when its width was only 100 to 120 feet. It struck at York and then lifted and came down about a quarter of a mile south of the railroad tracks at the Browder Place in the vicinity of Livingston. It then veered north and struck the tracks and then turned and followed the tracks for a comparatively short distance and then veered to the northeast. It must be remembered that the engineer was under orders to run his train according to a schedule and he was proceeding under these orders. Is it reasonable to think that every time an engineer

sees a threatening cloud in the sky approaching in his direction, he should stop his train? If so, what should he then do? Should he continue to stand still or reverse the engine and run it backwards to escape the storm? According to the engineer the storm was travelling generally along the tracks. Is it not reasonably possible that a stop would have left the train defenseless in its path? All of this goes to show that in proceeding on his regular course the engineer was not doing something which an ordinarily prudent person would not have done under the circumstances, because there is too much room for conjecture and uncertainty for him to be required to do otherwise. The fact that after an accident has happened it can then be shown how it could have been prevented is no evidence of negligence Louisville & N. R. Co. v. Finlay, 237 Ala. 116, 185 So. 904.

We think the lower court acted correctly in setting the judgment aside on the ground that the defendant was due the affirmative charge.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.