636

46 So.2d 213
## ROBERTS v. ALABAMA GREAT SOUTH-ERN R. CO.

,6 Div. 902.

Supreme Court of Alabama.

April 6, 1950.

Rehearing Denied May 18, 1950.

See also 250 Ala. 629, 35 So.2d 509.

Taylor, Higgins, Windham & Perdue, of Birmingham, for appellant.

Benners, Burr, Stokely & McKamy and R. Graye Tate, all of Birmingham, for appellee.

SIMPSON, Justice.

·Appellant, as administratrix of the estate of James Emory Roberts, sued appellee for damages for the death of her intestate alleged to have been caused by the negligence of the engineer in the operation of one of the appellee's interstate trains while the deceased was engaged in line of duty as flagman. 45 U.S.C.A. § 51 et seq.

This is the second appeal. The first trial of the case resulted in a verdict and judgment for the plaintiff, but on motion of the defendant the court set the judgment aside and granted a new trial upon the ground that the defendant was entitled to the affirmative charge. On appeal by the plaintiff to this court the judgment ordering the new trial on the stated ground was affirmed, this court holding that the evidence was not sufficient to establish negligence. Roberts v. Alabama Great Southern Railroad Co., 250 Ala. 629, 35 So.2d 509.

This appeal is likewise from the ruling of the trial court giving the defendant the affirmative charge, resulting in a judgment adverse to the plaintiff. The evidence is the same as that in the former trial except the additional testimony of a meteorologist, which we will deal with briefly. For a fuller statement of the evidence, reference may be had to the first case.

The tragic event occurred on February 12, 1945, while the train, consisting of a locomotive, tender, fifty freight cars, and the caboose, in which the plaintiff's intestate and the conductor were riding, was engaged in transporting interstate commerce between Birmingham, Alabama, and Meridian, Mississippi. All cars were loaded and the train was traveling at a speed of approximately ·thirty miles per hour when it was struck by a tornado near Livingston, Alabama. The entire train except the engine, tender and some tank cars were blown from the track and strewn along the right of way. The caboose was demolished and both plaintiff's intestate and the conductor died of injuries resulting therefrom.

There was a curve in the track between the train and the tornado and the engineer first observed the tornado about two or three minutes before it struck the train. It seemed to be proceeding in the general direction along the track, first on one side and then on the other. Just as his engine was coming over a rise or "hump," and the remainder of the train was downgrade from the "hump," was when he first came in view of the tornado. Had he stopped his train at the hump, the caboose, where the plaintiff's intestate was riding, would have escaped the tornado, since its path lead in a different direction—so it was discovered by inspection after the tornado passed. As stated, the only additional evidence is that of the testimony of the meteorologist, who gave a scientific explanation of the phenomenon, and stated that it appeared that the Weather Bureau had a report of seven tornadoes occurring on that day and that as to this particular one the report showed: "The tornado which originated south of Meridian, Mississippi moved northeastward, hit York and Livingston, Alabama, and passed Livingston at near 4:40 P.M., with a calculated speed of around 45 miles per hour. The total path was about 43 miles with 18 miles on the ground in the York-Livingston area. The width of the path was 150 yards, but it was said to be a quarter of a mile wide near Meridian and nine people were killed and 63 injured. Property damage was $220,000.00 including $25,-000.00 damage to railway freight cars."

He testified that the distinctive cloud pattern of a tornado is a funnel-like formation dropping from the cloud to the ground; that the funnel protrudes from the cloud base to the ground and that the funnel itself to which there is contact with the ground shifts or circles from side to side as the storm center progresses and moves. The variation of the circle at the bottom of the funnel would depend on the severity of the storm and the height of the cloud base; that it might be a variance in the width up to a quarter of a mile; that the cloud formation at the top circle follows a steady course, but the bottom does the circling; that the cloud does not always follow a reasonable, set pattern, but is dependent upon the wind flow at the bottom of the base and the funnel may sway as much as a quarter of a mile on either side of the cloud base; that there is no way of predicting how long a tornado will go on the ground, nor does the Weather Bureau issue a prediction of tornadoes, but only forecasts tornado symptoms; that when they have made predictions as to an actual area in which a tornado will hit, people will get in their automobiles in order to escape and sometimes will suffer more damage elsewhere than had they stayed in the place of the predicted area.

The sole claim of negligence is the failure of the engineer to stop when he observed the tornado. We are firm in the conclusion that the evidence of the meteorologist added nothing to the case and but serves to support the last holding, the essence of which was that there was nothing to show that the engineer failed to act as a reasonably prudent person would if so situated; that it was impossible for him to predict the course in which the tornado would travel and the mere fact that after the accident it was shown that it could have been prevented by acting differently is not of itself sufficient to support an inference of negligence. The view of the court can best be illustrated by the following statement in the first opinion: " * * * It is quite true that if he [the engineer] had stopped the train at the hump, the train would not have been struck and derailed. But how can it be reasonably said that the engineer should have stopped at the hump? Can it be that the engineer should have been able to predict the course of a tornado? Suppose he had stopped at the hump and the tornado lifting from its point of contact with the earth at York had struck the train at the hump? The hump was only about a mile and three-fourths from where the train was struck. Would he then have been guilty of negligence for failing to proceed? The very course which the storm in the present case took demonstrates, as shown by its path of destruction, that it is unreasonable to consider that the engineer should have been able to predict its course, especially when its width was

only 100 to 120 feet [yards]. It struck at York and then lifted and came down about a quarter of a mile south of the railroad tracks at the Browder Place in the vicinity of Livingston. It then veered north and struck the tracks and then turned and followed the tracks for a comparatively short distance and then veered to the northeast. It must be remembered that the engineer was under orders to run his train according to a schedule and he was proceeding under these orders. Is it reasonable to think that every time an engineer sees a threatening cloud in the sky approaching in his direction, he should stop his train? If so, what should he then do? Should he continue to stand still or reverse the engine and run it backwards to escape the storm? According to the engineer the storm was travelling generally along the tracks. Is it not reasonably possible that a stop would have left the train defenseless in its path? All of this goes to show that in proceeding on his regular course the engineer was not doing something which an ordinarily prudent person would not have done under the circumstances, because there is too much room for conjecture and uncertainty for him to be required to do otherwise. The fact that after an accident has happened it can then be shown how it could have been prevented is no evidence of negligence. * * *" 250 Ala. at pages 634–635, 35 So.2d at page 513.

Keeping in mind that there is no presumption of negligence in such cases and that to sustain the claim there must be evidence of a substantial sort, more than a scintilla, and that negligence cannot be predicated on conjecture or supposition, but must be inferred from a reasonable and fair interpretation of the evidence, Alabama Great Southern Railroad Co. v. Davis, 246 Ala. 64, 67, 18 So.2d 737, 740, certiorari denied 324 U.S. 846, 65 S.Ct. 676, 89 L.Ed. 1407, we are bound to conclude like we did before, that the defendant was entitled to the affirmative charge and that the trial court acted correctly in so ruling.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.