This is an action by H. Jason Wilson, Wallace J. Wilson, and Hazen Air Conditioning, Inc. (hereinafter "the corporation"), against Darren Douglas Brown arising out of the sale of Brown's capital stock in the corporation to the Wilsons. The Wilsons sought to recover the amount they had paid to Brown for his stock in the corporation, on the grounds of false representations and suppression of material facts. The Wilsons had given Brown a mortgage and security agreement to secure the purchase price for Brown's stock, and the Wilsons sought to have these rescinded because of the alleged misrepresentations. Brown filed a counterclaim against the Wilsons seeking to recover on a promissory *Page 758 
note executed to the order of Brown by the Wilsons. The trial court granted Brown's motion for summary judgment as to the Wilsons' claims against Brown and as to Brown's counterclaim against the Wilsons and the corporation. The Wilsons and the corporation appeal.
The standard of review which this Court must follow when summary judgment has been granted to a defendant on a plaintiff's claim against a defendant is well established. Summary judgment for a defendant is proper when there is no genuine issue of a material fact as to any element of a cause of action and the defendant is entitled to a judgment as a matter of law. If there is any evidence of every element of a cause of action, summary judgment is inappropriate. In determining whether there is any evidence to support every element of a cause of action in this case, this Court must review the record in a light most favorable to the plaintiffs and resolve all reasonable doubts against the defendant.Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986).
Reviewing the record in the light most favorable to the Wilsons and the corporation, we find that the trial court had the following facts before it at the time it granted Brown's motion for summary judgment. Brown and his son, David, and two other individuals, Floyd and Fondren, each bought 25% of the capital stock of the corporation from Maury Hazen in late 1979. David took the most active role of the four in the day-to-day running of the corporation. Brown came to the corporate office at least once or twice a week and knew the general condition of the business. Floyd and Fondren were basically silent stockholders. In January 1983, Floyd and Fondren tried to sell their stock to Brown and David, but no sale was ever consummated. Floyd and Fondren then contacted the Wilsons, concerning the sale of their stock. Floyd asked David to prepare a financial statement for the corporation to show the financial status of the corporation to the Wilsons. A document styled "Financial Statment [sic] — Feb." was prepared which purported to give a realistic picture of the financial status of the corporation as of February 1983. This was given to the Wilsons at a meeting not attended by Brown. A second meeting was held a week later which was attended by the Wilsons, Brown, David, and Floyd and Fondren. Brown was not contemplating selling his stock to the Wilsons or to anyone else at this time. The financial statement was passed around for everyone, including Brown, to see. Brown knew that the financial statement contained some erroneous information. The financial statement was not correct in what it reflected about the following items: (1) There was an accrued liability for payroll taxes of $16,000 as opposed to $5,000 as represented in the financial statement; (2) a check overdraft was actually $1,521.64 as opposed to $450 as reflected in the financial statement; (3) the actual accrued accounts payable owed by the corporation to others was $71,570 as opposed to $49,687 as reflected in the financial statement. In general, in the financial statement the corporation was shown to have a net worth greater than the actual net worth of the corporation. In discussing the financial aspects of the business, Brown told the Wilsons that the corporation was not financially capable of hiring Wallace Wilson; Brown advised the Wilsons of ongoing work which the corporation was performing for various individuals; Brown set forth the general condition of the business and prospective income. At the meeting, there was a general discussion that the corporation needed $10,000 in operating capital. Brown offered the books of the corporation to the Wilsons for their review; however, the Wilsons refused to examine the books because they would not have understood them and it would have cost them money to have their accountant examine them.
The "Financial statement" on which the Wilsons said they elected to rely had the following misspellings in addition to "Statment": "Recievables," "Inventiory," "Exspences," "Accurred," "Liablities," "Intrest," "Benifits," "Accured," "Currant," "Defurred" and "Liabilites." More importantly, *Page 759 
the amount stated for current assets was set forth in two different places within ten lines of each other, but the last entry was unexplainably almost $3,000 less than the first. After the second meeting, and after all the representations which Brown allegedly made had been made, Brown and David were asked by Floyd if they would be interested in selling their stock to the Wilsons. Brown and David agreed to sell their half interest for $25,000. At this time, the Wilsons had agreed to pay Floyd and Fondren $36,000 for their half interest. Floyd and Fondren agreed to reduce the price of their half interest to $25,000. Each of the four sellers received $3,125 in cash and a note for $9,375 which was payable in three annual installments of $3,125 plus interest at 10% per annum. Approximately four months after the sale, the Wilsons sent letters to the four sellers setting out various alleged misrepresentations made by the parties in the sale, including the material discrepancies between the financial statement given to the Wilsons and the actual financial condition of the corporation. Floyd and Fondren are not parties to this action. David is a defendant. Brown filed a motion for summary judgment, which was granted. Brown's summary judgment was made final pursuant to Rule 54 (b), Ala.R.Civ.P. This appeal involves only the summary judgment for Brown.
A false representation is one of the essential elements of fraudulent misrepresentation. Rudman v. Hooks, 252 Ala. 280,40 So.2d 866 (1949). We cannot find any evidence of a false representation by Brown to the Wilsons. Brown was not present when the financial statment was given to the Wilsons or when it was initially reviewed by the Wilsons. Brown had not prepared the financial statement. At the meeting which Brown attended, he discussed the ongoing contracts of the corporation. There is no evidence that these were misrepresented. There is no evidence of Brown "puffing." If anything, he down played the value of the corporation. Since a false representation is an essential element of fraudulent misrepresentation and there is no evidence of this element, summary judgment was appropriate as to the claim of misrepresentation.
The following are the elements of a cause of action for suppression of the truth: (1) a duty to disclose facts; (2) concealement or nondisclosure of material facts by the defendant; (3) inducment of the plaintiff to act, and (4) action by the plaintiff to his injury. National Park Bank v.Louisville N.R. Co., 199 Ala. 192, 74 So. 69 (1917). At most, Brown was merely silent in regard to the discrepancies in the financial statement. He offered the financial books of the corporation to the Wilsons and even showed these books to at least one of the Wilsons. Silence is not actionable fraud absent a confidential relationship or some special circumstances imposing a duty to disclose. Cooper Co. v.Bryant, 440 So.2d 1016 (Ala. 1983). There is no evidence that there was a confidential relationship between Brown and the Wilsons. Nor can we find special circumstances which would impose a duty to disclose. There were discrepancies between the financial statement and the actual financial condition of the corporation. Brown tried to get the Wilsons to examine the books of the corporation, but they refused to do so because they would not have understood them and it would have cost them money to have their accountant examine these books. It is obvious from the evidence before the Court that if the Wilsons had had the financial records reviewed as they were invited and encouraged to do prior to purchasing the capital stock of the corporation, they would have discovered all of these discrepancies at that time. This Court cannot help being impressed by the fact that it was Brown's evaluation of the corporation which allowed the Wilsons to purchase 50% of the stock in the corporation (half of this 50% being from Floyd, who was the Wilsons' son-in-law and brother-in-law) for *Page 760 
$11,000 less than the Wilsons had agreed to pay for this stock. We do not find any evidence of a duty to Brown to do more than he did.
In Torres v. State Farm Fire Casualty Co., 438 So.2d 757,758 (Ala. 1983), this Court wrote:
 "Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T T Corporation, 386 So.2d 413, 415 (Ala. 1980).
 "`If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, `volunti [sic] non fit injuria".'
Munroe v. Pritchett, 16 Ala. 785, 789 (1849)."
Just as there was no evidence to support the finding of a duty on the part of Brown to do more than he did, there was no evidence that the Wilsons acted as ordinarily prudent persons who exercised ordinary care in failing to examine or to have examined the financial records of the corporation before paying $50,000 for the stock in the corporation. Volenti non fitinjuria. Since there is no evidence of essential elements of suppression of the truth, the trial court correctly granted Brown's motion for summary judgment as to claim of fraudulent suppression.
No other matters were argued by the Wilsons.
The action of the trial court should be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.