Gerald and Sarah Harper appeal from a summary judgment in favor of the defendant, First Alabama Bank of Dothan. We affirm.
On December 2, 1983, the Harpers filed suit against the bank for breach of contract and fraud. For several years prior to 1983 the Harpers had financed their farming operations with this bank. In February 1982, the Harpers borrowed a certain sum of money and in return executed a "master note," which they secured by crops to be grown, by a real estate mortgage on their home, and by farm equipment. During 1982 the Harpers borrowed various smaller sums of money that were secured by real or personal property or crops to be grown.
The Harpers filed a complaint against the bank that alleged fraud and misrepresentation. The complaint was based upon alleged promises by the bank to finance the Harpers' 1983 farming operations and to make a loan payment to the Massey-Ferguson Credit Corporation on behalf of the Harpers.
The bank filed a motion for summary judgment supported by excerpts from the depositions of the Harpers and an affidavit of William Cordell II, an officer of the bank. The following is from the deposition of Mr. Harper:
 "Q. All right, sir. In your original complaint you also say that the bank told you they would pay the payment on the Massey-Ferguson combine; is that correct?
 "A. Are you saying the bank, now, or loan officer?
 "Q. I'm saying the bank. When I say the bank, I'm talking about an agent.
 "A. Okay. Now, he never said he would pay. He would see what he could do with it.
". . .
"A. They didn't finance me in '83.
"Q. Did they tell you they would?
"A. Well, they led me to believe right up —
"Q. How did they lead you to believe, Mr. Harper?
 "A. They kept telling me if I would do this, if I would do that, if I would do this, if I would do that, they would finance me.
"Q. But you didn't do all those things, did you?
 "A. I tried to do everything I could do, except sign my life away, put my head on the chopping block.
"Q. But you wouldn't do that?
"A. No.
 "Q. What do you mean by signing your life away, put your head on the chopping block?
 "A. From my standpoint, I thought they was pretty well secured, with a little time.
 "Q. You just didn't want to give them any other security?
 "A. Well, I didn't have anything else to give them but my life insurance.
 "Q. You didn't want to give them your life insurance?
 "A. No, because my family meant more to me than the bank did.
 "Q. So they didn't finance you because you wouldn't do what they asked you to do?
"A. Right."
The Harpers filed documents in opposition to the bank's motion for summary judgment. Those documents included an affidavit of Mr. Harper, additional excerpts from the depositions of the Harpers, and excerpts from the deposition of Thomas *Page 1368 
Roney, a bank officer. The following is from the affidavit of Mr. Harper:
 "When I was in the Bank at the time this was made [July 1982], I had a conversation with Mr. Bill Cordell about my plans for the 1982 crop year. I asked Mr. Cordell what I would have to do for the Bank to continue to finance me to let me plant my 1983 crop. Mr. Cordell said that if I would pay $60,000.00 towards the notes at First Alabama Bank I would be financed for the 1983 crop year.
". . .
 "I testified at my deposition that Mr. Cordell never definitely said the Bank would pay the combine payment in those words. That is correct. However, I was certainly led to believe the Bank would take care of the payment. As best I recall them the exact words Mr. Cordell used were: 'don't worry about it, we'll help you on the combine.' There is no doubt whatsoever that when I left the Bank that day I felt the Bank would make that combine payment."
The following testimony is from Mr. Harper's deposition:
 "Q. So Mr. Roney never told you that he would finance you in '83; he told you he would if you would do certain things?
"A. You right.
"Q. And you wouldn't do that?
"A. No, sir.
". . .
 "Q. Okay. After First Alabama Bank of Dothan told you they were not going to finance you for 1983 crops, did you go anywhere else to try to borrow the money for 1983 to try to farm?
"A. Most certainly.
"Q. What happened, Mr. Harper?
"A. I was turned down.
 "Q. You were turned down by all these people, so you just didn't plant in '83?
"A. No, I planted.
"Q. You planted?
"A. Uh-huh.
"Q. You planted a crop in '83?
"A. Right.
 "Q. Where did you get the money to plant your crop in '83?
"A. I didn't.
"Q. You didn't?
"A. I didn't get any money to plant in '83.
"Q. How did you plant?
 "A. Well, Mr. Perry Thomas down at Greenfront, he furnished me my seed and fertilizer until the fall."
The following is from the deposition of Thomas Roney:
 "Q. When was the decision made not to loan Mr. Harper money for the 1983 crop year?
 "A. I guess maybe the final decision was made in the early part of '83. The exact date, I don't recall. But it would have been early.
"Q. Who made that decision?
 "A. I made that decision. I am ultimately responsible for the decision.
 "Q. At any time prior to that date had the bank intended to commit itself to loan Mr. Harper money for the 1982 [sic] crop year?
"A. No.
 "Q. Prior to that date had the bank ever intended to loan Mr. Harper money for the 1983 crop year?
 "A. There was a possibility we would. You know, we just did not have all the facts to make the decision, but we were open. We were — We were open to the consideration of a loan."
In order to avoid the granting of a summary judgment, once the defendant has made a prima facie showing that there was no fraud, the plaintiff must present at least a scintilla of evidence on each of the following four elements of fraud: (1) a false representation; (2) concerning a material fact; (3) reliance by the plaintiff; and (4) damages as a proximate result. Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985). *Page 1369 
A "material fact" is a fact that induces action on the part of the complaining party. Crigler v. Salac,438 So.2d 1375 (Ala. 1983). The Harpers assert that the material facts represented to them by the bank were that the bank would finance their farming operations for 1983 and that it would make their "Massey-Ferguson combine" payment on their behalf. However, the evidence presented by the Harpers does not show that they acted or failed to act based upon the alleged representations made by the bank. Furthermore, even if the Harpers had been induced to act based upon these alleged representations, their reliance upon these alleged representations would not have been reasonable under the circumstances. See Bedwell Lumber Co. v. T TCorp., 386 So.2d 413 (Ala. 1980). Mr. Harper testified that the bank would have financed his farming operations for 1983 if he had agreed to certain conditions, which he would not agree to. Mr. Harper also testified that the bank's loan officer did not say the bank would make the "combine" payment but that he would see what the bank could do for him. The knowledge of these facts was sufficient to prohibit the Harpers from reasonably relying on the alleged representations of the bank. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.