567 So.2d 1245 (1990)
Martha CORNELIUS and Timothy Cornelius
v.
Douglas AUSTIN and Virginia Austin.
89-405.
Supreme Court of Alabama.
August 3, 1990.
Rehearing Denied September 14, 1990.
Kenneth Lee Cleveland of Cleveland & Cleveland, Birmingham, for appellants.
W. Lewis Garrison, Jr., of Corley, Moncus & Ward, Birmingham, for appellees.
PER CURIAM.
This is the second appeal of this case. See Cornelius v. Austin, 542 So.2d 1220 (Ala.1989). Martha and Timothy Cornelius originally sued Douglas and Virginia Austin, alleging fraud and breach of contract. The trial court entered summary judgment for the Austins on the fraud count alone, and this Court affirmed. Subsequent to that appeal, the Corneliuses amended their complaint, alleging conspiracy. The trial court entered a summary judgment in favor of the Austins on both the contract claim and the conspiracy claim. The Corneliuses appeal.
Upon review of the record, we find that the contract entered into by the parties prior to the real estate closing merged with the deed executed by the Austins and recorded in the Probate Court of Jefferson County, Alabama. The Corneliuses have failed to rebut the defendants' prima facie showing that there was no *1246 breach of contract as a matter of law. The conspiracy claim necessarily fails, not because of merger, but because there is no actionable wrong to support it.
Therefore, on the authority of Thibodeaux v. Holk, 540 So.2d 1378 (Ala.1989), and Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala.1983), appeal after remand, Ex parte Purcell Co., 451 So.2d 801 (Ala.1984), we affirm the trial court's judgment on both counts.
AFFIRMED.
MADDOX, HOUSTON and STEAGALL, JJ., concur.
JONES, ALMON and ADAMS, JJ., concur in the result.
HORNSBY, C.J., dissents.
HORNSBY, Chief Justice (dissenting).
I must respectfully dissent from the majority's holdings in this case. Through this appeal and the earlier appeal in this action, Cornelius v. Austin, 542 So.2d 1220 (Ala. 1989) (Cornelius I), the plaintiffs have been effectively denied their day in court for their claims against both the sellers of the house and the real estate agent.
In the original complaint, the plaintiffs alleged fraudulent misrepresentation, suppression, and concealment of a defective condition of the residence, and breach of contract. Defendant First Real Estate pleaded merger and release, denying any fraud and alleging that the plaintiffs had been contributorily negligent and that they had voluntarily assumed the risk. First Real Estate filed a motion for summary judgment based on these grounds. The Austins also filed a motion for summary judgment, contending that the plaintiffs' claims of fraud were not supported by a scintilla of evidence.
The trial court entered summary judgment for the defendants only on the tort claims. This Court in Cornelius I affirmed that judgment in an opinion written by Justice Beatty before I became a member of this Court. Given a clean slate, I would write to allow the jury to resolve the plaintiffs' claims, as discussed below.

DISCUSSION
The majority in Cornelius I found that the plaintiffs had not shown a scintilla of evidence to support their claims of fraud. I believe most strongly that a different result is warranted here and that the Cornelius I opinion analyzes the law of fraud incorrectly.

FACTS
The record shows the following facts: The defendants hired Ms. Forehand, a real estate agent from First Real Estate, to be the listing agent as well as the selling agent for their house, which was located in Birmingham. One of the plaintiffs, Mrs. Cornelius, saw the "for sale" sign in the yard of the house and called the agent to set up an appointment to see the house. Mrs. Cornelius stated that during her first visit to the house, she asked Forehand if there were "any problems" with the house and that Forehand replied that there were not. The Corneliuses visited the house several more times prior to making an offer, but were unable to look into the crawl space under the house because an air duct blocked the entry to, and a view of, the crawl space.
Mrs. Cornelius testified that prior to the closing she had also had a telephone conversation with Mrs. Austin, in which she asked her if there "were any problems with the house," and that Mrs. Austin had replied "no." Mrs. Austin, however, did not recall this conversation and remembered only a question from Mrs. Cornelius in which Mrs. Cornelius had asked if the house had ever mildewed.
On October 20, 1985, the Corneliuses and the Austins executed a sales contract for the house, contingent upon the Corneliuses' obtaining an FHA loan. A termite inspector, Mr. Brown, indicated that he performed a termite inspection on the house subsequent to the execution of the contract and found water under the house. He notified the sales agent of this discovery on November 20, 1985, six days prior to the closing. This time period was disputed in that Mrs. Austin testified that she remembered *1247 that the inspection took place only four days prior to closing. The sales agent telephoned Mrs. Austin and told her about the water; Mrs. Austin told her husband. Mr. Austin removed the throw rug from the hall floor, opened the plywood hatch covering the space where a floor furnace had been removed from beneath the hall floor, and saw water underneath the floor in the crawl space. Mr. Austin stated that he did not smell an odor and that he and his wife attempted to determine the cause of any leak, but could not find the source of the problem. He admitted that he purchased sand and covered the water with one or two wheelbarrow loads of sand, replaced the plywood hatch, and covered the hatch with the throw rug. Mr. Austin stated that the sand was used to cover the water so that the termite inspector could proceed with his inspection.
According to Forehand, she visited the Austins on the evening of November 20 or the next day and asked the Austins if they had checked out the water under the house. The Austins testified that they informed her that they could not find the source of the water, and Mr. Austin stated that he had placed sand under the house to absorb the water. Further testimony indicated that Mr. Austin asked her if that would "take care of it" or if they should call a plumber. Forehand told the Austins not to worry about it, that they did not need to call a plumber, that they (the Austins) had done all they could do, and that "you don't have anything to worry about." Forehand also indicated that she questioned Mr. Austin as to past problems with the septic tank and was told that there were no problems, except "on one occasion the water did not run out of the tub very fast, and we [the Austins] put something in there ... that took care of it." Forehand testified that she again told the Austins that "you don't have anything to worry about." The Austins testified that they did not tell the Corneliuses about the water problem.
The closing took place on November 26, 1985. Mrs. Cornelius testified that she picked up the keys on December 13, 1985, when the Austins had finally vacated the house. She further stated that she and other members of the family walked through the empty house that evening and noticed an odor, but could not find the source. The next day the Corneliuses began cleaning and painting and noticed the odor again. Mrs. Cornelius was attempting to clean the hardwood floors and removed the rug in the hallway. Underneath the rug she discovered the plywood hatch. In removing the rug and the plywood, the Corneliuses discovered the source of the odor, finding raw sewage in the crawl space. Mr. Cornelius testified that when he removed the plywood hatch he saw sand covering the sewage, and he stated that if he had known of the problem, he would not have been involved in the purchase of the house. Both plaintiffs testified that they were unaware that they had the option of having someone inspect the house for them.
The Corneliuses testified that a member of the family notified the state health department and that the health department subsequently identified the substance under the house as sewage, issued a citation, and informed Mrs. Cornelius that the problem had to be resolved within 10 days. The plaintiffs further testified that Mr. Cornelius also telephoned Mr. Austin after the discovery of the sewage to ask if Austin knew of the sewage under the house and to ask if he would help pay the cost of the repairs. According to the Corneliuses, Austin replied that he knew of the existence of water under the house, but that he would not help with repairs.
The plumbers hired by Mr. Cornelius never determined the exact cause of the problem, according to Mr. Cornelius, but both the plumbers and the health department recommended that the plaintiffs connect the house to the city sewer system. This was done, costing the Corneliuses $2100.

Standard of Review
The standard of review applicable to a summary judgment for a defendant in the context of these facts is set out as follows:
"Summary judgment for a defendant is proper when there is no genuine issue of *1248 material fact as to any element of a cause of action and the defendant is entitled to a judgment as a matter of law. If there is any evidence of every element of a cause of action, summary judgment is inappropriate. In determining whether there is any evidence to support every element of a cause of action in this case, this Court must review the record in a light most favorable to the plaintiffs and resolve all reasonable doubts against the defendant."
Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986), citing Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). The motion must be denied if there is a scintilla of evidence in support of the plaintiffs' claims. Kimbrel v. Mercedes-Benz Credit Corp., 476 So.2d 94 (Ala.1985); Ray v. Montgomery, 399 So.2d 230, 232 (Ala.1980); see A.R. Civ.P., Rule 56(c) and comments thereto.

FRAUD

Fraudulent Misrepresentation
Ala.Code 1975, § 6-5-101, states:
"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
It follows that fraud in this context is comprised of four elements: (1) a false representation; (2) concerning a material fact; (3) that is relied upon by the plaintiffs; and (4) that causes damage to the plaintiffs as a proximate result of the reliance. Thus, whenever the defendants make a prima facie showing that one of the these elements is missing from the plaintiffs' case, the plaintiffs must present at least a scintilla of evidence that such element is present in order to survive the motion for summary judgment. Harper v. First Alabama Bank of Dothan, 514 So.2d 1366, 1368 (Ala.1987); Bank of Red Bay v. King, 482 So.2d 274 (Ala.1985).
In their first appeal, the Corneliuses contended that the statements of the defendants that there were "no problems" with the property constituted a false representation concerning material facts upon which they relied to their detriment. I agree that this argument is supported by the evidence. The defendants contended that at the time the telephone conversation between Mrs. Cornelius and Mrs. Austin occurred, the Austins had not been informed of the presence of water under the house. Thus, the defendants argued that there was no misrepresentation of a "material existing fact," as is required by Sly v. First National Bank of Scottsboro, 387 So.2d 198 (Ala.1980). A "material fact" is a fact that induces action on the part of the complaining party. Harper, supra; Crigler v. Salac, 438 So.2d 1375 (Ala.1983).
I note from the record, however, that there are no specific statements in evidence showing that the conversations between the parties occurred only before the Austins discovered the plumbing problem. The response made by Mrs. Austin that there were no problems could very well have been made subsequent to the discovery of the sewage in the crawl space, but prior to the closing. That is an issue of fact to be determined by the jury.
The defendants also contended that any statement made by Forehand was a "statement of opinion" and not actionable, in contrast to those statements in Ray, supra. In this case, the Corneliuses questioned the Austins as to the existence of any problems with the house and received a negative response when in fact the Austins knew of a problem. These representations are very different from the representations in Ray, supra, that the house was a "nice house" and was supported by "hewn pine timbers and had good support." The defendants in Ray did not know of the existence of termites in the substructure, and had treated the house for termites. Moreover, the Rays were not prevented from inspecting the crawl space under the house, as the Corneliuses were here. Further, the Rays failed to inquire about any possible problems.
Finally, the Austins contended that the plaintiffs did not "justifiably rely on the *1249 alleged misrepresentation."[1] Under the circumstances, I do not believe that the plaintiffs failed to act reasonably in attempting to protect their own interests, as required under Torres v. State Farm Fire & Cas. Co., 438 So.2d 757 (Ala.1983). The Corneliuses inspected the property four to six times prior to the closing and did not know that they were entitled to have an independent inspector look at the house. They did not blindly trust, but rather attempted to exercise ordinary care. Regardless of whether there was standing water or raw sewage under the house, the plaintiffs were prevented from discovering the trap door in the floor of the house because the defendants had camouflaged it. Furthermore, the plaintiffs could not know what was trapped underneath the door and further concealed under the sand put there by the Austins.
The defendants additionally contended that the "Acknowledgement of Parties," a document signed by all of the parties at the closing, released the defendants from liability in this case. This document does not contain any specific language of release, however. Indeed, the signing of this document by the defendants would constitute a fraudulent misrepresentation under § 6-5-101. I note the pertinent portions of the acknowledgment:
"1. That the Sellers have disclosed all defects in the residence and fixtures located therein of which they are aware to the Brokers and to the purchasers.

"2. That the purchasers examined the residence and the fixtures located therein prior to closing and were satisfied with the condition of the same at the time of closing.
"3. That the Brokers have not made any expressed or implied warranties or any representations regarding the condition of the residence or any fixtures located therein. The purchasers agree that First Real Estate Corporation of Alabama has not made any representations or given any opinions as to the quantity of property conveyed."
Mrs. Austin testified that she read and understood this document prior to signing it at the closing. However, this testimony was later contradicted when the Austins testified that they did not fully read nor understand much of what was presented to them for their signatures at the closing. The "acknowledgment" quoted above placed an affirmative duty upon the sellers to inform not only the real estate agent of the existence of the water or sewage under the house, but also the purchasers. The statements that there were "no problems," when viewed in light of the acknowledgment document and the testimony that the defendants learned of the problem from four to six days prior to the closing, were, at the minimum, a fraudulent misrepresentation at the time of the closing.
Thus, viewed in the light most favorable to the Corneliuses, the record contains evidence: (1) that there was a problem with the house that was known to the Austins prior to closing; (2) that this fact was not communicated to the Corneliuses either prior to or at the closing; (3) that the Austins misrepresented that there was no problem; and (4) that this misrepresentation was relied upon by the Corneliuses to their detriment. At the very least, these facts create a jury question as to fraudulent misrepresentation.

Fraudulent Concealment
Ala.Code 1975, § 6-5-103, states:
"Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."
At the risk of being repetitious, I again point to the evidence in the record that *1250 suggests that the defendants knew from four to six days prior to the closing that there was standing water under the house (even if they did not know that in fact the water was sewage) after they had told the Corneliuses that there were no problems with the house. Further, the defendants actively attempted to conceal that problem by dumping sand under the floor to "soak up the water."
The Austins' affidavits filed in support of their motion for summary judgment show again that they knew that there was water underneath the house prior to the closing and that they had discussed the presence of the water with Ms. Forehand. These affidavits further state that the Austins had no conversations with the Corneliuses until the closing. Thus, it is obvious that the defendants knew that some problem existed under the house, and it is irrelevant whether it was standing water or raw sewage in the crawl space. In light of the prior assurances Mrs. Austin and Ms. Forehand had given Mrs. Cornelius, knowledge of these problems should have been conveyed to the Corneliuses prior to closing. At the least, this evidence provides a scintilla of evidence and requires the submission of this claim to the jury.

Fraudulent Suppression
Ala.Code 1975, § 6-5-102, states:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
Thus, to prove fraudulent suppression, a plaintiff must show (1) a duty to disclose the facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury. Wilson v. Brown, 496 So.2d 756, 759 (Ala. 1986). I note that "silence is not actionable fraud absent a confidential relationship or some special circumstances imposing a duty to disclose." Wilson, supra at 759; Cooper & Co. v. Bryant, 440 So.2d 1016 (Ala.1983).
The Austins contend that in real estate actions this Court has consistently held that sellers do not owe a duty of disclosure to purchasers, and that there is no confidential relationship from which a duty to disclose arises. The Austins further contend that there was no concealment because, they say, they disclosed the problem to the real estate agent.
In Fennell Realty Co. v. Martin, 529 So.2d 1003 (Ala.1988), this Court stated:
"Although Alabama retains the caveat emptor rule with regard to the resale of used residential real estate (Ray v. Montgomery, 399 So.2d 230 (Ala.1980)), it is not applicable, under certain circumstances, when the purchaser of a used house inquires directly (either of the seller or of the seller's agent), prior to closing, about a material defect or condition of the home. If the agent is questioned directly, and the agent assumes the obligation to inspect the house for the defects inquired about and to disclose his findings to the buyer, the law imposes on the agent the duty of truthful disclosure of all material facts revealed by the inspection. [Citations omitted.]
"Moreover, if the agent (whether of the buyer or of the seller) has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent is under a duty to disclose the defect and is liable for damages caused by nondisclosure. This duty is also placed on the seller. See Cashion v. Ahmadi, 345 So.2d 268, 270 (Ala.1977)."
529 So.2d at 1005 (emphasis added). See also, Harrell v. Dodson, 398 So.2d 272, 277 (Ala.1981) (Embry, J., dissenting).
I believe that the rationale of the Fennell decision is applicable to this case. The facts of this case show active suppression of material factsfacts that the defendants were under a duty to communicate. Under Cornelius I, the Corneliuses would be required to ask the agent specifically whether there was sewage or water under *1251 the house. Because Fennell was applicable at the time Cornelius I was written, both Forehand and the Austins were required to disclose any condition that would affect health or safety, where the condition was not known to or was not readily observable by the Corneliuses. The plaintiffs had already directly asked both Forehand and Mrs. Austin if there were any problems with the house and had received negative responses. In viewing this evidence most favorably to the plaintiff, I conclude that the facts present a jury question as to fraudulent suppression.

BREACH OF CONTRACT
Furthermore, I cannot agree with the majority's opinion in the present appeal, which holds that there is no claim for breach of contract given the fraudulent actions of the defendants. In the original complaint and the amendments thereto, the plaintiffs contended that the "defendants contracted to deliver the premises with all plumbing and appliances in operable condition... [and] that the defendants breached that agreement [in that] there was a concealed defect in the plumbing of which the defendants had knowledge and the plaintiffs could not upon reasonable inspection have discovered."
The Austins contend that the sales contract required the purchasers to satisfy themselves, at their own expense and before closing, that all the conditions of the contract were satisfied. The Austins further argue that under the contract the conditions of the property, as well as the condition of any systems, were the responsibility of the purchaser after closing. However, the defendants also claim that the doctrine of merger applies and that it prevents the plaintiffs from alleging breach of contract. As shown by the defendants in their original briefs, the doctrine of merger applies only in the absence of fraud or mistake. Russell v. Mullis, 479 So.2d 727, 730 (Ala. 1985); Collier v. Brown, 285 Ala. 40, 228 So.2d 800 (1969). If the defendants acted fraudulently, then the doctrine of merger is not a defense. I would allow the jury to determine whether the Austins breached the contract.
The defendants further claim that the contract was not breached, because (1) the FHA approved the condition of the property after making inspection, and (2) the condition of the property met the FHA requirements. A review of the record reveals only the testimony of Forehand to support this contention regarding the FHA inspection. It is for the trier of fact to determine what weight to give to her testimony as to any possible FHA inspection. There is no evidence in the record substantiating this claim.

CONSPIRACY
The plaintiffs, finding themselves without an action for fraud after this Court's first opinion, amended their complaint to add a count alleging conspiracy. The majority holds again that the plaintiffs have failed to establish an actionable claim. The majority bases its holding that there is no valid conspiracy claim on the reasoning that because none of the other claims is valid, "there is no actionable wrong to support it."
Conspiracy consists of a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means, which results in damage to the plaintiff. Sadie v. Martin, 468 So.2d 162 (Ala.1985); Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala.1983). There was evidence that the Austins and Forehand accomplished the sale of the residence by failing to disclose the presence of sewage under the house, and that the sale resulted in damage to the plaintiffs. At the very least, Forehand was under a duty to disclose the existence of the plumbing problem.[2]

*1252 CONCLUSION
The majority of this Court has failed to take the opportunity to correct the wrongs inflicted upon the plaintiffs and to correct bad precedent. Although I cannot affect the operation of the majority opinion of this Court in Cornelius I except by the discussion above concerning its value as precedent, I firmly believe that the plaintiffs were entitled to have a jury hear their claims, and on this appeal I would reverse the summary judgment entered in favor of the defendants.
NOTES
[1] I note that "reliance" has been redefined in Hickox v. Stover, 551 So.2d 259 (Ala.1989), an opinion that had not been decided when Cornelius I was released.
[2] I note that Ala.Code 1975, § 34-27-36(a)(3)b., requires that a licensed real estate agent be fined or reprimanded when the agent is found guilty of:

"b. Failing to disclose to a potential purchaser or lessee any latent structural defect or any other defect known to the licensee. Latent structural defects and other defects do not refer to trivial or insignificant defects but refer to those defects that would be a significant factor to a reasonable and prudent person in making a decision to purchase or lease...."