Plaintiff Ira M. Betts appeals from the summary judgment in favor of defendant McDonald's Corporation on all counts of his complaint. At issue is a real estate brokerage fee that Betts, a licensed Alabama real estate broker, claims McDonald's owes him.
McDonald's contacted Betts in June 1988 about securing property in Fayette, Alabama, suitable for the construction of a McDonald's restaurant. After locating certain property owned by James F. Smith and David H. Patterson, Betts prepared a real estate contract with a total sale price of $81,500. The contract was signed on June 20, 1988, and provided, in part, as follows:
 "4. Earnest Money: Purchaser shall deposit with the title insurance company . . . within thirty (30) days after the last execution of this contract, ONE THOUSAND DOLLARS ($1,000.00), as earnest money, to be credited against the purchase price at closing. . . .
". . . .
"6. Conditions Precedent: . . .
". . . .
 "In the event the conditions of this contract have not been satisfied or complied with within one hundred eighty (180) days after the opening of the escrow, or in the event that the soil tests, surveys, permits, and/or other approvals do not meet with Purchaser's approval or disclose matters which would make the property unsuitable for the purposes stated in this contract, anything contained in this contract to the contrary notwithstanding, Purchaser or Seller may, at any time after the one hundred eighty (180) day period, terminate this contract, and the money and documents deposited in escrow shall be returned to the party depositing same. . . .
". . . .
 "9. Time of the Essence: Time is of the essence of this contract, but any defaulting party is entitled to ten (10) days after receipt of written notice of a default to cure before the other party may terminate or exercise other remedies under this contract."
That same day, Betts and Smith and Patterson signed a "brokerage fee agreement," which required Smith and Patterson to pay Betts a broker's fee equal to 10% of the sales price, or $8,150. Also on that date, Betts signed a "broker's statement," which provided that "the aforementioned commission, fee or remuneration is due and payable from the seller only, and . . . the purchaser has no obligation whatsoever for said commission, fee or remuneration."
McDonald's did not deposit the earnest money in escrow until sometime in November 1988. It nonetheless tested the soil and found it to be contaminated.[1] As a result, McDonald's informed Smith and Patterson that it did not want the property and instructed Betts to look for other land. Thereafter, McDonald's decided to go ahead with the purchase and attempted to take further soil samples, but was precluded from doing so by Smith and Patterson.[2] McDonald's subsequently filed suit, seeking a 30-day extension of the 180-day purchase period, as well as a preliminary injunction preventing Smith and Patterson from prohibiting it from entering the property to test the soil. The trial court granted both the extension and the injunction.
The transaction was later concluded and on the day of the closing, Smith and Patterson executed a warranty deed conveying the property to McDonald's; however, Smith and Patterson did not pay Betts his *Page 1254 
commission as they were obligated to do under the brokerage fee agreement. Betts subsequently sued McDonald's and Smith and Patterson and their wives, Frances and Barbara, on June 15, 1989,[3] alleging the following: interference with contractual or business relations; conspiracy to interfere with contractual or business relations; outrage; fraud; breach of contract; and, by amendment, waiver; estoppel; quantum meruit; and reformation.[4]
After a hearing, the trial court on February 14, 1990, entered summary judgment for McDonald's on all counts. Betts appeals. Neither the Smiths nor the Pattersons are parties to this appeal.
 I
The gist of Betts's claim for tortious interference is two-fold: 1) That McDonald's should have, at the very least, withheld the amount of Betts's commission on the date of the closing when it paid Smith and Patterson, and 2) that the delay by McDonald's in placing the earnest money in escrow led Smith and Patterson to refuse to pay Betts his commission. A review of the elements of the tort of intentional interference with contractual or business relations shows these claims to be without merit. In order to succeed on that cause of action, the plaintiff must prove the following:
 "(1) The existence of a contract or business relation;
 "(2) Defendant's knowledge of the contract or business relation;
 "(3) Intentional interference by the defendant with the contract or business relation;
 "(4) Absence of justification for the defendant's interference; and
 "(5) Damage to the plaintiff as a result of defendant's interference."
Gross v. Lowder Realty Better Homes Gardens, 494 So.2d 590,597 (Ala. 1986) (emphasis added) (footnotes omitted).
McDonald's based its motion for summary judgment on the broker's statement, which specifically obligated Smith and Patterson to pay Betts's commission. This document, however, would not have precluded an action for tortious interference if Betts could have shown that McDonald's had intentionally interfered with the brokerage fee agreement Betts had with Smith and Patterson or had intentionally interfered with Betts's business relations with Smith and Patterson.
There is no question that Betts had a contract with Smith and Patterson as well as ongoing business relations, nor is it disputed that McDonald's was aware of that contract and those relations. There is, however, no evidence that McDonald's intentionally interfered with the contract or the business relations.
McDonald's was required, under its real estate contract with Smith and Patterson, to pay them $81,500 on the date of closing. To pay them any less than that amount would have been a breach of that contract. Furthermore, there is no correlation between the delay by McDonald's in opening the escrow account and Smith and Patterson's failure to pay Betts his commission. Had they wanted to, Smith and Patterson could have exercised their right under the real estate contract to terminate it after the delay, in which case they would no longer have been obligated under the brokerage fee agreement to pay the commission.[5] *Page 1255 
To withstand a motion for summary judgment, once the movant makes a prima facie showing that there is no genuine issue of material fact, the non-movant must (in cases filed after June 11, 1987) show that there is "substantial evidence" in support of his position. See Ala. Code 1975, § 12-21-12. Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989).
In opposition to the McDonald's motion for summary judgment, Betts relied on one of Smith and Patterson's answers to an interrogatory:
 "(a) [State each] and every fact known to you which causes you to conclude that Betts 'actively supported McDonald's Corporation in their non-performance.'
 "Answer — He was attempting to purchase other lands for them in the vicinity; he did not get the contract signed before a substantial period of time after June 20, 1988; he failed to request and determine that McDonald's Corporation deposited $1,000.00 earnest money as the contract provided and he was present with McDonald's Corporation representatives and lawyers every time we had a hearing in Fayette."
While that answer might have some bearing on why Smith and Patterson breached their brokerage fee agreement with Betts, it in no way constitutes substantial evidence thatMcDonald's intentionally interfered with that contract. There is absolutely no evidence that McDonald's encouraged Smith and Patterson not to pay the commission or that it prohibited them from doing so. Thus, summary judgment with regard to that count was correct.
Finally, because Betts's tortious interference claim fails, the conspiracy claim must also fail, there being no actionable wrong to support it. Purcell Co. v. Spriggs Enterprises, Inc.,431 So.2d 515 (Ala. 1983), appeal after remand, Ex parte PurcellCo., 451 So.2d 801 (Ala. 1984). See, also, Cornelius v. Austin,567 So.2d 1245 (Ala. 1990).
 II
There is, likewise, no evidence that McDonald's ever waived its rights under the broker's statement. In fact, it has relied on that document since it was signed and, as previously indicated, the broker's statement was the basis of the motion by McDonald's for summary judgment. Moreover, Betts has shown no evidence that McDonald's ever expressly or impliedly indicated that it would be responsible for the commission so as to suggest that McDonald's should now be estopped from denying responsibility for the commission.
For the same reason, Betts's quantum meruit argument fails. "It has long been recognized in Alabama that the existence of an express contract [here, the broker's statement] generally excludes an implied agreement relative to the same subject matter." Vardaman v. Florence City Board of Education,544 So.2d 962, 965 (Ala. 1989) (citations omitted).
 III
In conclusion, Betts concedes in his brief that "it cannot be argued in this appeal that the claim for outrage would survive such that it could be submitted to a jury." Rather, he argues that he should be allowed an opportunity for additional discovery in order to develop his claim of outrage. Betts had that opportunity prior to this appeal and failed to present substantial evidence to support that cause of action. Therefore, the summary judgment concerning it was appropriate.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.
[1] Smith and Patterson had purchased the property from Exxon Corporation, an oil company.
[2] Smith and Patterson had not terminated the contract with written notice.
[3] The "substantial evidence rule," which became effective June 11, 1987, is the applicable standard in this case. See Ala. Code 1975, § 12-21-12.
[4] Betts's appeal addresses only his claims based on interference with contractual or business relations, conspiracy, waiver, estoppel, quantum meruit, and outrage; therefore, we will confine our review to those issues. See Bogle v. Scheer,512 So.2d 1336 (Ala. 1987).
[5] Although the brokerage fee agreement states that "the closing attorney or escrow agent will deduct this fee from the proceeds of the sale at the actual final closing of the above described property and forward same to BETTS PROPERTIES," neither McDonald's nor the closing attorney was a party to that contract; it was signed only by Smith and Patterson and Betts. *Page 1256