The plaintiff, Reeves Cedarhurst Development Corporation ("RCDC"), appeals from a summary judgment in favor of the defendant, First American Federal Savings and Loan Association ("First American"). We affirm.
On June 27, 1989, RCDC borrowed $790,000 from First American to use in constructing condominium units. In connection with the loan, RCDC executed a one-year *Page 181 
promissory note providing for quarterly interest payments. The note contained a default provision stating that if RCDC failed to timely pay the interest then, the entire debt would, at the option of First American, become due and payable. As security for the loan, RCDC mortgaged real estate upon which it was building condominiums — lots located at 56, 57, 58, 59, 60, and 61 Revere Way, in Huntsville, Alabama.
RCDC proceeded to build condominiums on each of these lots. Before the events giving rise to this action, RCDC had sold two of the condominiums. Although RCDC's promissory note did not contain a provision for partial releases of the mortgaged property, First American agreed to a partial release on each of these sales. Each release was conditioned upon RCDC's contribution of all its sales proceeds, after closing costs, to First American to be applied against the principal and accrued interest on RCDC's note.
RCDC did not repay the loan when it matured on June 27, 1990. As of November 1, 1990, the loan had a principal balance of $501,650.00. On November 1, 1990, RCDC contracted to sell a third condominium, at 57 Revere Way, to Mr. and Mrs. Hattox, closing to be held on November 16, 1990.
On November 6, 1990, the chairman of First American, Morris Anderson, sent a letter notifying RCDC that First American would release its lien against 57 Revere Way for $170,702.01. On November 13, 1990, the chairman of RCDC, George Ragsdale, sent a letter to First American proposing a release price of $148,339.01. Ragsdale's letter also stated that "any excess proceeds from the sale, [could] be applied against the principal of the loan, provided that the amount of such excess funds [could] be drawn by RCDC in the future against the loan for costs incurred in the remaining units sold." Ragsdale acknowledged in this letter that RCDC's note was in default. For this reason, he conditioned RCDC's delivery of a closing statement for the sale of 57 Revere Way on First American's agreement to accept RCDC's proposed release price of $148,339.01 and to extend the maturity date of RCDC's note to June 27, 1991. First American rejected RCDC's proposed release price in a letter from Anderson dated November 15, 1990. Nonetheless, Anderson agreed to extend the maturity date on RCDC's note to June 27, 1991, regardless of whether 57 Revere Way sold, as long as RCDC paid the accrued interest on the note and Ragsdale executed renewal documents "the next time he [was] in Huntsville and it [was] convenient for him to do so."
Notwithstanding First American's letter rejecting RCDC's proposed release price, on November 16, 1990, First American executed a release of 57 Revere Way for $148,339.01. First American also deposited the excess proceeds from the sale, $24,002.93, in RCDC's construction account as proposed by RCDC in its letter of November 13, 1990. Also on November 16, 1990, Anderson sent Ragsdale a letter stating that, prior to renewing RCDC's note, First American would need a corporate resolution authorizing Ragsdale to borrow on behalf of RCDC and a copy of RCDC's current financial statement. Ragsdale never supplied these documents or executed the renewal documents necessary to extend the maturity date on the note. Further, on December 31, 1990, RCDC failed to make a quarterly interest payment.
On January 9, 1991, Anderson sent a letter to Ragsdale notifying him that RCDC's note was past due and notifying him that First American would foreclose on the remaining Revere Way lots if the note was not paid in 30 days. Ragsdale did not respond to this letter. On April 5, 1991, First American foreclosed on the property.
RCDC filed this action on April 8, 1991, alleging breach of contract, fraud, and wrongful foreclosure. First American filed a motion for summary judgment. The trial court granted the motion and RCDC appealed.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether *Page 182 
the movant was "entitled to a judgment as a matter of law."Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988) (citing Chiniche v. Smith, 374 So.2d 872
(Ala. 1979)); Rule 56(c) Ala.R.Civ.P. When the movant has carried the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact, the party opposing the summary judgment motion then has the burden of presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989); Ogle v. Long, 551 So.2d 914, 915
(Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412, 413 (Ala. 1990); Wilson v. Brown, 496 So.2d 756,758 (Ala. 1986); Harrell v. Reynolds Metals Co.,495 So.2d 1381, 1383 (Ala. 1986).
 I. Breach of Contract
RCDC argues that the summary judgment for First American was improper as to its breach of contract claim because, it says, the evidence indicated that the parties had a binding agreement to extend the maturity date on RCDC's note to June 27, 1991. InFerlesie v. Cook, 201 Ala. 571, 78 So. 915 (1918), this Court held that a plaintiff could not recover in a breach of contract action where "it was distinctly understood that the contract was not to become effective unless" another executed it and the other had not done so. Ferlesie,201 Ala. at 572, 78 So. at 916. Anderson's letter dated November 15, 1990, clearly stated that Ragsdale's execution of renewal documents and RCDC's payment of accrued interest were conditions precedent to the formation of a contract to extend the maturity date on RCDC's note. Andermon's letter dated November 16, 1990, indicated that, also as a condition precedent to the renewal of RCDC's note, Ragsdale needed to provide a copy of a corporate resolution authorizing him to borrow on behalf of the corporation and a copy of RCDC's current financial statement. RCDC does not dispute the fact that Ragsdale never executed the renewal documents, or provided copies of the corporate resolution or the financial statement. RCDC also does not dispute the fact that it failed to make an interest payment on December 31. Accordingly, we conclude that First American's summary judgment was proper as to RCDC's breach of contract claim.
 II. Wrongful Foreclosure
RCDC argues that the summary judgment for First American was improper as to its claim alleging wrongful foreclosure. A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.Johnson v. Shirley, 539 So.2d 165, 168 (Ala. 1989);Paint Rock Properties v. Shewmake, 393 So.2d 982, 984
(Ala. 1981). RCDC presented no evidence to rebut First American's prima facie showing that it foreclosed on the Revere Way lots for the purpose of securing the debt owed by RCDC. Therefore, the summary judgment was proper as to RCDC's claim alleging wrongful foreclosure.
 III. Fraud
RCDC argues that the summary judgment for First American was improper at to it fraud claim because, it says, First American fraudulently represented that it would extend the maturity date on RCDC's note. To prove fraud, the plaintiff must show the following: (1) that the defendant made a false representation to the plaintiff; (2) that the representation concerned a material fact; (3) that the plaintiff relied on the representation; and (4) that the plaintiff incurred damage as a proximate result of the reliance. Harper v. First AlabamaBank of Dothan, 514 So.2d 1366, 1368 *Page 183 
(Ala. 1987); Bank of Red Bay v. King, 482 So.2d 274,281 (Ala. 1985); Ala. Code 1975, §§ 6-5-101, -103. After reviewing the record, we conclude that RCDC produced no evidence to rebut First American's prima facie showing that it made no false representation. The evidence indicates that First American's offer to extend the maturity date on RCDC's note was clearly conditioned on First American's receiving a corporate resolution authorizing Ragsdale to borrow on behalf of RCDC and on its receiving a copy of RCDC's current financial statement, and on Ragsdale's execution of renewal documents and payment of accrued interest. Ragsdale and RCDC failed to meet these conditions. Thus, the summary judgment was also proper as to RCDC's fraud claim.
 IV. Estoppel
Finally, RCDC argues that the summary judgment in favor of First American was improper because, it says, First American should be estopped from foreclosing on RCDC's mortgage. To invoke the doctrine of estoppel, a party must demonstrate (1) that the party to be estopped had knowledge of the facts; (2) that the party to be estopped intended that his conduct be acted upon, or that the party asserting estoppel had a right to believe that the conduct was so intended; (3) that the party asserting estoppel was ignorant of the true facts; (4) that the party asserting estoppel relied on the other's conduct; and (5) that the party asserting estoppel was injured as a result of his reliance. Ott v. Fox, 362 So.2d 836, 839
(Ala. 1978) (citing Mooradian v. Canal Insurance Co.,272 Ala. 373, 130 So.2d 915 (1961); Ellison v. Butler,271 Ala. 399, 124 So.2d 88 (1960)).
The gist of RCDC's estoppel argument is that, because First American promised to extend the maturity date on RCDC's loan, RCDC paid First American $24,002.93 to be applied to future costs and interest necessary to keep the loan current, a sum it says it otherwise would not have paid. Thus, RCDC asserts that First American waived its right to object to RCDC's default existing as of November 15, 1990, and should be estopped to deny the existence of an agreement between the parties to extend the maturity date to June 27, 1991.
Although the record supports an inference that First American deposited $24,002.93 of the proceeds from the sale of 57 Revere Way into RCDC's construction account and thereafter used that money to pay costs and interest on RCDC's note, this inference does not provide a basis for RCDC to invoke the doctrine of estoppel. RCDC's argument ignores the fact that First American's promise to extend the maturity date on RCDC's note was contingent upon RCDC's fulfillment of four conditions: (1) RCDC was to supply First American with a corporate resolution authorizing Ragsdale to borrow on behalf of RCDC; (2) RCDC was to supply First American with a copy of its current financial statement; (3) Ragsdale was to execute renewal documents; and (4) RCDC was to pay accrued interest. Ragsdale and RCDC failed to comply with these conditions. Absent its own compliance, RCDC may not invoke the doctrine of estoppel to obtain an extension, because First American, by placing conditions on its offer to grant an extension, conveyed to RCDC that RCDC would not be entitled to an extension if it did not perform the conditions.
In Security Pacific Mortgage Real Estate Services, Inc.v. Canadian Land Co. of America, 690 F. Supp. 1214
(S.D.N.Y. 1988), aff'd sub nom. Security Pacific Mortgage Real Estate Services, Inc. v. Herald Center, Ltd.,891 F.2d 447 (2d Cir. 1989), a federal district court held that a mortgagee was not estopped from foreclosing on the mortgaged property even if he had agreed to forebear or had engaged in conduct sufficient to constitute a waiver of default, because the waiver could protect only against defaults existing as of that date, not subsequent defaults. Id. at 1218. Moreover, the mortgagee could withdraw the waiver by subsequent notice of intent to foreclose. Id. (citingBarclay's Bank v. Smitty's Ranch, Inc., 122 A.D.2d 323,504 N.Y.S.2d 295 (1986)); see also Jamaica SavingsBank v. Cohan, 36 A.D.2d 743, 320 N.Y.S.2d 471 (1971) (no factual issue existed where default in payment *Page 184 
of taxes was willfully continued after timely and clear notice that plaintiff would require compliance with the terms of the mortgage).
Even if we construed First American's promise to grant an extension as a waiver of RCDC's default existing as of November 15, 1990, we note that RCDC subsequently defaulted on its December 30 interest payment. Moreover, the record indicated that First American waited two months for Ragsdale to execute renewal documents before sending notice of its intent to foreclose. First American then waited another three months before actually foreclosing, and during this period RCDC made no attempt to redeem the property or otherwise respond to First American's notice of foreclosure. Under these circumstances, RCDC's evidence is insufficient to invoke the doctrine of estoppel.
The trial court correctly held that there were no genuine issues of material fact and that First American was entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. Accordingly, we affirm the summary judgment in favor of First American.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.