185 So. 904

**LOUISVILLE & N. R. CO. v. FINLAY et al.**

**3 Div. 270.**

Supreme Court of Alabama.

Jan. 19, 1939.

C. E. Hamilton, of Greenville, McMillan, Caffey & McMillan, of Brewton, and Steiner, Crum & Weil, of Montgomery, for appellant.

H. C. Rankin, of Brewton, for appellees.

GARDNER, Justice.

On former appeal (Louisville & Nashville Railroad Co. v. Finlay, 233 Ala. 128, 170 So. 207), the record disclosed that the flood of 1929, which destroyed the car load of sugar here involved, was the highest known, and attention was directed to that fact. The holding was that the loss was the proximate result of the "act of God," and that plaintiff, upon whom rested the burden of proof under the decisions of the federal courts, by which this trial was to be guided, had not shown negligence on the part of the carrier, and that the defendant was due the affirmative charge.

Following remandment of the cause, and upon a retrial, plaintiff, placing stress upon the observation here, that the flood was unprecedented, offered one Baggett, eighty-nine years of age, as a witness whose testimony (though sharply contradicted by the witness Williamson, who was about the same age, and who remembered the Lincoln Flood) tended to show that during the period of the War Between the States, and in 1864, there was a flood at Brewton of equal or greater depth than that of 1929, which was called the Lincoln Flood. And the learned trial judge gave force to this proof in giving to the jury plaintiff's written charge to the effect that if they "believe from the evidence that the Lincoln Flood was greater than the 1929 flood," then the latter was not an unprecedented flood.

And it would appear, as a reasonable interpretation of this charge, that if such was the fact defendant's defense that the loss was the result of an "act of God" was not established. So interpreted, we think too great a stress is laid upon the

word unprecedented. The rule of exemption from liability, if the loss is the result of an "act of God," is founded upon reason and justice that one should not be held responsible for that which could not have been reasonably anticipated. Or, as stated in Steele v. Townsend, 37 Ala. 247, 79 Am. Dec. 49, and quoted in the opinion on former appeal, 170 So. 209, the "intervention of such an extraordinary, violent and destructive agent, as by its very nature raises a presumption that no human means could resist its effect."

The expression "act of God" has been employed in various and broad senses by the authorities, such as an "extraordinary convulsion of nature or a direct visitation of the elements, against which the aids of science and skill are of no avail," or an "accident produced by physical causes which are irresistible," and other such expressions of like nature. 9 Amer.Jur. 849.

■ In Barnet v. New York Cent. & H. R. R. Co., 222 N.Y. 195, 118 N.E. 625, cited in our former opinion, the simple statement is made that "an extraordinary flood * * * is an act of God." [page 627.] And the Virginia court in Southern Railway Co. v. Cohen Weenen & Co., 156 Va. 313, 157 S.E. 563, states that [page 564] " 'an act of God,' as the term is known to the law, is such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected." Like observation is found in our case of Law v. Gulf States Steel Co., 229 Ala. 305, 156 So. 835. But the Virginia court also, in the same opinion, points out that it need not be unprecedented, observing in this respect that "a building destroyed by an earthquake would be a building destroyed by an act of God. Should it be rebuilt and again destroyed, the second shock would be as much an act of God as the first, but it would not have been unprecedented. If it could not have been anticipated, or expected, under normal conditions, that is sufficient." And the authorities appear generally to be in accord upon this question. 9 Amer.Jur. 852.

The question of precedent, therefore, bears relation to the matter of reasonable anticipation, and opportunity to avert the consequences, and it is in that sense that the authorities have noted the "unprecedented" nature of the catastrophe. And some authorities have declined to give weight to proof showing a flood only once or twice in a generation. 4 R.C.L. 713; 11 L.R.A. 615, note; Ford v. Wabash R. Co., 318 Mo. 723, 300 S.W. 769.

But we are not here called upon to give full approval to this observation, and do not so intend to indicate by directing attention thereto. Indeed, we are inclined to the view it may be considered too extreme a statement. But that question to one side.

■ Here the period of time, as testified by the witness Baggett, covers practically two generations, and if these authorities are to be followed the flood of 1864 should be considered too remote for all practical purposes. But no definite decision in this regard is essential. The remoteness of the time does not stand alone. The admissibility of this proof must rest also upon a showing that conditions were substantially the same (Southern Railway Co. v. Lefan, 195 Ala. 295, 70 So. 249); and we think Baggett's own testimony discloses such was not the case. True, the railroad was there, and a depot, though its location has been changed. And the place was Brewton, but not anything resembling the town as it now exists. The railroad has been "raised a little along for years," and the streets have "been raised some and * * * higher than * * * then." Further the witness says: "There used to be a pond out there where the park is now, and it was there until it was filled up by degrees. I don't have any idea when it ceased to be a pond and became a park. I can't remember that. I believe the railroad has for years and years been filled in out there on that right of way from what it was." And as descriptive of the place at that time the witness states: "In 1864 and '65 there was hardly any Brewton there, just woods and crawfish ground and crawfish chimneys and ponds. By crawfish chimneys I mean where crawfish work them up. There were some houses in the business section." And other witnesses corroborated Baggett as to the changed condition of the town and its streets. But we need not further pursue the discussion.

■ The proof fails to meet the requirements of our decisions that conditions must be shown to be substantially the same (Southern Railway Co. v. Lefan, supra); and when to this is added the further fact as to remoteness of time, it is clear enough defendant's objection thereto should have been sustained.

And upon the merits, this evidence excluded, leaves plaintiffs' case where it was on former appeal. True, there has been some stress on weather conditions and a little added emphasis here and there. But considering it all, and comparing it with that on former appeal, we consider the basic facts the same.

The argument of plaintiffs, with citation of Eiland v. Casey, 9 Cir., 266 F. 821, 12 A.L.R. 179, which we have read with interest, that the flood of 1929 was not an "act of God" within the meaning of the law, is but an argument against the soundness of our conclusion on former appeal.

▇ We have studied the case in the light of this argument, and find ourselves yet persuaded that on former appeal we reached a conclusion in harmony with the law and the facts. Nor do we feel that a stronger case for negligence is here presented than formerly.

Plaintiffs have doubtless misinterpreted the expression in the former opinion as to the car being moved to higher ground. This expression had reference to the placing of the car on the unloading track, which "is somewhat higher than the track at the station," and not to any movement of the car on the day of March 14th. And it may be added that the car was placed not only at a place where defendant had a right to consider it safe, but where other property of citizens was moved, as considered safe by them. But what was said as to our conclusion of facts on former appeal is equally applicable now, and need not be repeated.

▇ We there cited our case of Smith v. Western Railway Co., 91 Ala. 455, 8 So. 754, 11 L.R.A. 619, 24 Am.St.Rep. 929, to the effect it is no proof of negligence that because after an injury has resulted it can then be shown how the injury might have been avoided.

The question is, what notice or knowledge had the defendant, from which such an overflow could reasonably have been anticipated or foreseen? The Mississippi court in the recent case of Baltimore & Ohio R. Co. v. Johl & Bergman, 180 Miss. 593, 177 So. 778, gave expression to like thought when it said [page 783]: "Looking backward, we can now see that the goods would not have been damaged from the flood water if this shipment had been halted in the eastbound yard. But that is not the test."

▇ And in considering the question of the affirmative charge, it should be borne in mind that the scintilla rule does not prevail, but the case is controlled by the rule of the federal decisions, noted in Birmingham Belt R. Co. v. Bennett, 226 Ala. 185, 146 So. 265, wherein is found the following excerpt from Marion County v. Clark, 94 U.S. 278, 24 L.Ed. 59:

"Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence. Ryder v. Wombwell, Law. Rep. 4 Exch. 39.

"Decided cases may be found where it is held that, if there is a scintilla of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule; to wit, that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." [Page 268.]

And considering the unsatisfactory nature of Baggett's testimony, and the remote period of time to which it relates, rendering it of little value, if any, from a practical standpoint, we think it clear enough that under the above noted rule, even with this testimony included, the defendant was yet due the affirmative charge.

Let the judgment stand reversed and the cause remanded.

Reversed and remanded.

THOMAS, BOULDIN, and FOSTER, JJ., concur.