605 So.2d 1185 (1992)
Michael J. KELLY, et al.
v.
M. TRIGG ENTERPRISES, INC., et al.
1901932.
Supreme Court of Alabama.
July 31, 1992.
Rehearing Denied October 9, 1992.
*1187 David H. Marsh of Pittman, Hooks, Marsh, Dutton & Hollis, P.C., Birmingham, for appellants.
R. Ben Hogan III and Richard D. Stratton of Hogan, Smith, Alspaugh, Samples & Pratt, P.C., Birmingham, for appellee M. Trigg Enterprises, Inc.
A. Joe Peddy and Michael B. Walls of Smith, Spires & Peddy, Birmingham, for appellee Tooties-Kwik Stop, Inc.
PER CURIAM.
The plaintiffs, Michael J. Kelly, Lillian V. Kelly, and Patrick D. Kelly, appeal from a summary judgment entered in favor of the defendants, M. Trigg Enterprises, Inc. ("Trigg"), and Tootie's Kwik Stop, Inc. ("Tootie's"). We reverse and remand.
The Kellys were all severely injured when the automobile in which they were traveling was struck by the automobile driven by Karen L. Nix on July 27, 1990, in Birmingham, Alabama. Nix was 16 years old on the date of the accident. Angel Dawson and Melanie Quinn, 18 and 17 years old respectively, were passengers in Nix's car at the time of the accident. Although the deposition testimony of Nix, Dawson, and Quinn differed in various respects, the following aspects of their experience are undisputed. After a period of traveling in various parts of the Birmingham area, the three girls stopped at Concert Concepts with the intention of purchasing Ethyl Gaz, a pure ethyl chloride product marketed as an air freshener. There is evidence that this product, recognized by the slang term "poppers," has gained popularity as an inhalant. The salesperson at Concert Concepts refused to sell Nix the Ethyl Gaz because Nix was unable to produce proof that she was not a minor. The girls then drove to Tootie's, and a young man, over the age of majority, purchased Ethyl Gaz for them. The girls then parked in a nearby parking lot. Although the girls' deposition testimony is in dispute with regard to their use of the Ethyl Gaz as an inhalant, it is undisputed that Nix, the driver of the automobile, repeatedly sprayed the Ethyl Gaz on her sleeve and inhaled the substance by placing her mouth over the area sprayed. Nix, who stated that she had not used the product previously, said she felt dizzy and numb after inhaling the Ethyl Gaz.
Nix stated that the girls then decided to leave the parking lot and that, as they were traveling down a highway, the automobile's floor mat became caught on the accelerator. According to Nix, she lost control of the automobile when she leaned down to adjust the mat. The automobile crossed a median and struck the Kellys' automobile. Nix stated that she was under the influence of the Ethyl Gaz at the time of the accident and that she believed that it played a role in causing the accident. Dawson and Quinn each stated that after Nix inhaled the Ethyl Gaz she rapidly accelerated the automobile out of the parking lot and over the median in the highway and then turned into the oncoming traffic that included the Kellys' automobile.
The Kellys sued, along with other defendants, Trigg, the distributor of Ethyl Gaz; and Tootie's, the retailer from which Nix, Dawson, and Quinn acquired the Ethyl Gaz. The Kellys alleged that Tootie's distributed an unreasonably dangerous product to Nix and that the distribution was negligent and wanton. The Kellys further alleged that Tootie's had reason to know or should have known that the Ethyl Gaz was likely to be used by a minor as an inhalant. The Kellys alleged that Trigg distributed an unreasonably dangerous product that was used by Nix in a foreseeable manner and that such conduct was a proximate *1188 cause of the plaintiffs' injuries and created liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). They further alleged that Trigg's distribution of Ethyl Gaz was negligent and wanton. Finally, the Kellys claimed that Trigg negligently and wantonly failed to adequately warn of the dangers associated with the use of Ethyl Gaz.
Trigg and Tootie's each claimed that Nix's misuse of the Ethyl Gaz was unforeseeable and, therefore, was a superseding or intervening cause of the Kellys' injuries. The trial court's order entering a summary judgment in favor of Tootie's and Trigg states, in pertinent part:
"Although there are serious conflicts in the testimony of [the] three girls as [to] their activities, there are several points that are undisputed:

"FIRST; The three girls did not make a purchase of Ethyl Gaz from any business establishment that evening. It is suggested that a man made a purchase at TOOTIE'S; however, this is open to serious question. After leaving CONCERT CONCEPTS the three girls never got out of their vehicle until after the wreck occurred.

"SECOND; If Ethyl Gaz was purchased the evening of the wreck and the same came into the possession of the three girls, the purchase had to have been made by an adult male between the ages of twenty (20) and twenty-five (25).

"THIRD; each of the three girls denied ever having used Ethyl [Gaz] before the evening of the wreck, and two of them denied having used it that evening.

"FOURTH; none of the girls ever read the labels on the can of Ethyl Gaz the evening of the wreck, and none had ever read the labels at any time before.
"....
"The court finds that any purported sale by any of the defendants in this action of the product known as ETHYL GAZ on July 27, 1990, was a legal sale and was not in violation of any city, county, or state law. Counsel have not furnished the court with any citation to such a law of Alabama.
"The court finds that any purported sale by any of the defendants in this action of the product known as Ethyl Gaz on July 27, 1990, was to an adult. Further, that said sale was not to a person under a disability including non-age or minority.
"The court finds that the product known as Ethyl Gaz was delivered to NIX, QUINN, and DAWSON by an adult and not by the defendants.
"The court finds that the issue of warning is not before the court in that the warnings of whatever type or kind that appeared on the labels of the Ethyl Gaz can were not read or considered by the defendant NIX or any person in the NIX vehicle.
"....
"The court finds that the actions of the defendant NIX and the manner in which the Ethyl Gaz was used on July 27, 1990, were not reasonably foreseeable by the defendants."
The Kellys claim that the trial court erred in entering a summary judgment in favor of Trigg and Tootie's, and they base their claim on the following contentions: (1) the defendants supplied a product that was unreasonably dangerous to Nix, entitling a jury to find both defendants liable for the Kellys' injuries; (2) there was no intervening cause that broke the causal relationship between the misconduct of the defendants and the Kellys' injuries; and (3) the warnings provided by Trigg were inadequate as a matter of law, considering the fact that Ethyl Gaz was marketed as an air freshener.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering a summary judgment. The rule requires the trial court, in order to enter a summary judgment, to determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
"`The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left *1189 for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).'"
Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989) (quoting Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala.1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion; that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Because this action was not pending on June 11, 1987, Ala.Code 1975, § 12-21-12, mandates that the Kellys meet their burden by "substantial evidence." Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Under the substantial evidence test the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1982).
In entering the summary judgment in favor of Trigg and Tootie's, the trial court held that the manner in which Nix used the Ethyl Gaz, as an inhalant, was "not reasonably foreseeable by the defendants." Our review of the record reveals the following: Michael Trygstad, the owner and president of Trigg, maintained that the product Ethyl Gaz is marketed solely as an air freshener and is a competitor of common household air fresheners. Ethyl Gaz is the only air freshener that is composed of pure ethyl chloride. When this substance is used for medical purposes, typically to freeze sports injuries, a prescription is necessary to acquire it. A "Special Gas Material Safety Data Sheet" indicates that the symptoms of inhalation of ethyl chloride include dizziness, nausea, and vomiting, and that respiratory paralysis and death may occur as a result of a high level of absorption. The data sheet also indicates that the chemical may produce narcotic and anesthetic effects and that it has a pungent ethereal odor.
Invoices prepared by Trigg include a warning to Trigg's customers that retail sale of alkyl nitrites and ethyl chlorides may be governed by various laws and ordinances and that retailers should verify that their resale is in compliance with such laws and ordinances. Although this product is marketed as an air freshener, it is Trigg's policy that Ethyl Gaz not be sold to minors.
An affidavit of an assistant attorney general for the State of Texas, Richard Tomlinson, discloses a conversation that he had with Trygstad in 1989 that was prompted by the State's assertion that Ethyl Gaz was an unapproved new drug. Tomlinson stated that he discussed with Trygstad the fact that some of Trigg's products were being used as illicit drugs rather than as air fresheners. The affidavit indicates that in early 1990 the State of Texas entered into agreements that imposed permanent injunctions upon two companies other than Trigg, prohibiting their sale of products labeled as "room odorizers" that contained ethyl chloride. The affidavit concludes with the statement that, as an assistant attorney general for the State of Texas, Tomlinson had "received reports from investigators with the Texas Department of Health and the Houston Police Department *1190 that the product Ethyl Gaz containing ethyl chloride was widely used as an inhalant drug in the year 1989."
Trygstad's deposition testimony reveals that it is Trigg's intention that retailers keep Ethyl Gaz behind the counter in their stores because the product is not to be sold to minors. When asked why Trigg recommends that Ethyl Gaz be kept behind the counter of the retailer, Trygstad indicated that the recommendation is made because of the "potential for abuse." Moreover, in response to further questions regarding Trigg's policies for the resale of Ethyl Gaz, Trygstad stated that such measures were necessary because it was foreseeable prior to July 1990 that Ethyl Gaz would be used as an inhalant. A listing of Trigg's customers discloses an unusually significant number of adult bookstores and stores selling items relating to drug use, considering Trigg's contention that Ethyl Gaz is a competitor of common household air fresheners. Finally, we note that Trygstad stated that his company had done no research with regard to the use of pure ethyl chloride as an air freshener.
We first address the Kellys' negligence causes of action against Trigg and Tootie's. "To recover in a negligence action, the plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff as a result of that breach." Hall v. Thomas, 564 So.2d 936, 937 (Ala.1990). In Buchanan v. Merger Enters., Inc., 463 So.2d 121 (Ala.1984), we stated the following principles relating to the element of duty:
"The threshold issue in determining whether a common law negligence action will lie is to determine whether the defendant owed a duty to a class of persons which included the [plaintiff]. The duty issue is essentially a public policy question, i.e., whether the law should impose a requirement on the defendant that it do or refrain from doing some act for the safety and well-being of the plaintiff.
"....
"The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised."
Id. at 125-26. In Bean v. BIC Corp., 597 So.2d 1350, 1352 (Ala.1992), we noted, "in the interest of public policy, and following our case precedents, that a finding of legal duty in this State continues to be a function of the foreseeability of the danger, tempered by a consideration of the feasibility of an alternative design."
In entering a summary judgment in favor of Trigg and Tootie's, the trial court presumably found that neither Trigg nor Tootie's owed a duty to the Kellys, or, in effect, any other member of the public, to refrain from a sale of Ethyl Gaz under circumstances such as those present in this case. Applying the above principles, we disagree with the trial court.
The Kellys presented substantial evidence that it was foreseeable to both Trigg and Tootie's that "harm may result if care is not exercised." Buchanan, 463 So.2d at 126. In other words, the Kellys presented substantial evidence that it was foreseeable that Ethyl Gaz would be used as an inhalant rather than as an air freshener. Considering the existence of a genuine issue of material fact with regard to foreseeability, the trial court erred in concluding that Trigg and Tootie's did not owe a duty to the Kellys.
Trigg and Tootie's contend that Nix's conduct was a superseding or intervening cause of the Kellys' injuries and, therefore, that the causal relationship between their alleged misconduct and the Kellys' injuries was broken. However, an event is superseding only if it is unforeseeable. A foreseeable intervening event does not break the causal relationship between the defendants' actions and the plaintiffs' injuries. General Motors Corp. v. Edwards, 482 So.2d 1176, 1195 (Ala.1985); Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala.1976). As we stated previously, the Kellys presented substantial evidence that it was foreseeable that Ethyl Gaz could be used as an inhalant by one operating an automobile and that an accident could occur as a result of the impaired state of the influenced driver.
*1191 We therefore hold that the trial court erred in entering a summary judgment in favor of Trigg and Tootie's on the Kellys' negligence causes of action.
We next consider the Kellys' contentions that the conduct of Trigg and Tootie's in distributing the Ethyl Gaz was wanton. What constitutes wanton misconduct depends on the facts presented in each particular case. Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371 (Ala.1989); Brown v. Turner, 497 So.2d 1119 (Ala.1986); Trahan v. Cook, 288 Ala. 704, 265 So.2d 125 (1972). A majority of this Court, in Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala. 1987), emphasized that wantonness, which requires on the part of the defendant some degree of consciousness that injury is likely to result from his act or omission, is not to be confused with negligence:
"Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury....
"Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. `Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.' McNeil v. Munson S.S. Lines, 184 Ala. 420, 425, 63 So. 992 (1913)."
510 So.2d at 145. See also Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371 (Ala.1989).
We believe that the Kellys produced substantial evidence that Trigg and Tootie's were conscious that injury was likely to result from marketing a pure ethyl chloride "air freshener"; that reasonable persons could conclude from that evidence that it was foreseeable, if not intended, that the product would be used as an inhalant; and thus that there was a genuine issue of material fact as to their consciousness that injury was likely to result from their actions. Thus, we conclude that the trial court erred in failing to submit to the jury the Kellys' claims alleging wanton misconduct on the part of Trigg and Tootie's.
We next consider the Kellys' claims relating to the Alabama Manufacturer's Liability Doctrine ("AEMLD") arising from the allegedly "unreasonably dangerous" nature of Ethyl Gaz. In Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621 (Ala. 1991), this Court reiterated the elements of an AEMLD claim established in Casrell v. Altec Indus., Inc., 335 So.2d 128, 132-33 (Ala.1976), and Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala.1976):
"`To establish liability, a plaintiff must show:
"`(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
"`(a) the seller is engaged in the business of selling such a product, and
"`(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
"`(2) Showing these elements, the plaintiff has proved a prima facie case although
"`(a) the seller has exercised all possible care in the preparation and sale of his product, and
"`(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.'"
We recognized in Yamaha Motor Co. that "[t]he question whether a product is `unreasonably dangerous' is for the trier of fact, just as a question of negligence is." 579 So.2d at 621. In adherence to this principle, we hold that the trial court erred *1192 in entering a summary judgment in favor of Trigg and Tootie's on the Kellys' AEMLD claim. Reviewing the record in a light most favorable to the Kellys and resolving all doubts in their favor, we believe that the Kellys presented "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer," West, supra, that Ethyl Gaz is an "unreasonably dangerous" product for which Trigg and Tootie's could be held liable for its distribution.
Although "the gravamen of an action under the AEMLD is that `the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff or damaged his property when such product, substantially unaltered, was put to its intended use,'" Dennis v. American Honda Motor Co., 585 So.2d 1336, 1338 (Ala.1991) (quoting Atkins v. American Motors Corp., 335 So.2d 134, 139 (Ala. 1976)) (emphasis added), we believe that there exists a genuine issue of material fact as to whether the intended use of Ethyl Gaz was as an inhalant rather than as an air freshener.
Trigg and Tootie's contend that Nix's inhalation of the Ethyl Gaz was a misuse of the product that entitled them to a summary judgment. In Banner Welders, Inc. v. Knighton, 425 So.2d 441, 448 (Ala.1982), we reaffirmed the principle that misuse is a defense under the AEMLD. We also noted that "`[o]rdinarily, the conduct of the plaintiff, in his use of an alleged defective product, is a factual issue for the jury.'" Id. (quoting Beloit Corp. v. Harrell, 339 So.2d 992, 997 (Ala.1976)). However, "[w]hen asserting misuse as a defense under AEMLD, the defendant must establish that the plaintiff used the product in some manner different from that intended by the manufacturer. Stated differently, the plaintiff's misuse of the product must not have been `reasonably foreseeable by the seller or manufacturer.'" Edward C. Martin, Alabama's Extended Manufacturer's Liability Doctrine (AEMLD), 13 Am.J.Trial Advoc. 983, 1040 (1990). Although, under the present circumstances, the alleged misuse of the Ethyl Gaz was by one other than the plaintiffs, the above principles are equally applicable. Our previous analysis with regard to the foreseeability by Trigg and Tootie's that Ethyl Gaz would be used as an inhalant applies equally to the defense of misuse. Because an issue exists as to whether inhalation was foreseeable by Trigg and Tootie's, the summary judgment was necessarily inappropriate as far as it was based on the defense of misuse.
Finally, the Kellys contend that the warnings provided by Trigg were inadequate. The label on the can of Ethyl Gaz used by Nix included a warning about inhaling the contents of the product. It is undisputed that Nix did not read the warning before she inhaled the Ethyl Gaz. In concluding that the plaintiffs' claim based upon a failure to adequately warn was defeated, the trial court relied on Gurley v. American Honda Motor Co., 505 So.2d 358 (Ala.1987).
In Gurley, this Court stated:
"The element of proximate cause is essential to the plaintiff's prima facie case of negligent failure to adequately warn. A negligent-failure-to-adequately-warn case cannot be submitted to a jury unless there is some evidence that the allegedly inadequate warning would have been read and heeded and would have kept the accident from occurring. E.R. Squibb & Sons, Inc. v. Cox, 477 So.2d 963 (Ala.1985)."
Id. at 361. See also Deere & Co. v. Grose, 586 So.2d 196 (Ala.1991). In the present case, there was no evidence of proximate cause; therefore, summary judgment on the failure-to-warn claim was proper.
However, we would be quick to observe that the failure of Nix to read the warning against inhaling Ethyl Gaz would be relevant as a defense only if the jury finds that the use intended by Trigg for Ethyl Gaz was other than as an inhalant, and that inhaling Ethyl Gaz was a misuse of the product. In other words, it is not inconceivable, with regard to this product, that evidence could be produced at trial to indicate that the real intended use was as *1193 an inhalant rather than as an air freshener. If this possibility should be supported by sufficient evidence, then the failure to read the warning label on the can of Ethyl Gaz could not be successfully utilized as a defense under the present state of the law in AEMLD cases. Both logic and law indicate that it would be unreasonable to allow a manufacturer who has warned against the hazardous, but intended, use of its product to defeat an otherwise proper action under the AEMLD by simply showing that its product contained an "adequate warning." To allow that would be to engage in hypocrisy.
Based on the foregoing, the judgment of the trial court is reversed as to all counts except the count alleging failure to warn, as to which the judgment is affirmed, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
STEAGALL, J., concurs in the result.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
I believe that the trial judge correctly entered the summary judgment in favor of the defendants in this cause.
There are many products on the market that are dangerous if they are not used for their intended purpose. The facts in this record indicate that Ethyl Gaz is such a product, but the evidence shows unequivocally that the manufacturer and the seller took measures to keep the product out of the hands of minors and also that there were adequate warnings on the product concerning the dangers that would arise if it were misused.
In my opinion, the plaintiffs failed to present substantial evidence creating genuine issues of material fact. In my view, the facts presented here show, as a matter of law, that the subject product was not put to its intended use and that the misuse of the product and the events that followed were not reasonably foreseeable to either defendant. Consequently, I must respectfully dissent.