644 So.2d 864 (1994)
Howard BRADFORD and Tommie Bradford
v.
UNIVERSAL CONSTRUCTION COMPANY, INC.; and Health Care Authority of the City of Huntsville, a health care authority d/b/a Huntsville Hospital.
1921825.
Supreme Court of Alabama.
January 14, 1994.
Rehearing Denied July 15, 1994.
*865 Earl E. Cloud, Huntsville, for appellants.
James E. Davis, Jr. and Jeffrey T. Kelly of Lanier Ford Shaver & Payne, P.C., Huntsville, for appellees.
COOK, Justice.
Howard Bradford and his wife, Tommie Bradford, appeal from a summary judgment entered in favor of the defendants, Universal Construction Company, Inc., and Health Care Authority of the City of Huntsville, doing business as Huntsville Hospital. For the reasons set forth below, we affirm in part, reverse in part, and remand.
Universal Construction Company had contracted with Huntsville Hospital to construct an addition to its hospital facility. While construction was going on, the hospital administrator noticed a valve pit that was open on the sidewalk next to the new construction and, afraid that a small child would fall in and be injured, he requested that the construction workers find a temporary cover for the pit until the City of Huntsville delivered the lid that was to be permanent. Pursuant to this request, construction workers placed two or three full sheets of plywood over the opening. The construction company's employees said each sheet was 4' by 8' and was ¾ inch thick and weighed about 60 pounds.
On July 16, 1991, Howard Bradford was on the sidewalk next to the construction site when a gust of wind picked up one of the pieces of plywood; the wind carried it approximately 20 feet, and it hit Mr. Bradford in the leg and injured him. Because of a preexisting diabetic condition, he had complications associated with his injury.
Howard Bradford sued, alleging that Universal and Huntsville Hospital had negligently or wantonly maintained their construction site by placing an unweighted piece of plywood over the valve and that their negligence had proximately caused his injury. Bradford also alleged a breach of contract. His wife also sued, alleging a loss of consortium. On appeal, the plaintiffs address only the negligence claim; they make no argument specifically addressing the breach of contract claim or the wantonness claim. Therefore, the summary judgment is affirmed as to those claims, and we need not discuss them.
"The standard of review applicable to a summary judgment is the same as the standard for granting the motion; that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990)."
Kelly v. M. Trigg Enterprises, Inc., 605 So.2d 1185, 1189 (Ala.1992). If the defendants offered evidence making a prima facie showing that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law, then the Bradfords had to present substantial evidence creating a genuine issue of material fact. Id.
"With regard to the negligence claim, we recognize that before liability for negligence can be imposed, there must first be a legal duty owed to the person injured or to a class of persons to which the plaintiff belongs, and a breach of that duty, proximately resulting in the injury. Hill v. Reaves, 224 Ala. 205, 206, 139 So. 263 (1932). The existence of a duty to the plaintiff is fundamental to a negligence claim. City of Bessemer v. Brantley, 258 Ala. 675, 681, 65 So.2d 160, 165 (1953)."
Graveman v. Wind Drift Owners' Ass'n, Inc., 607 So.2d 199, 203 (Ala.1992).
"This Court has recognized that a landowner's duty extends beyond the premises *866 where the land abuts public ways or sidewalks. See, e.g., Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. 390, 393, 118 So.2d 727, 729 (1959); City of Birmingham v. Wood, 240 Ala. 138, 141, 197 So. 885, 887 (1940); Texas Co. v. Williams, 228 Ala. 30, 31, 152 So. 47 (1934); Hill v. Reaves, 224 Ala. 205, 207, 139 So. 263, 264 (1932). These landowners, in the use and enjoyment of their property, must exercise ordinary care not to cause or permit a condition to exist that will result in injury to others in the rightful use of the sidewalk or street adjacent to the property. See Hill v. Reaves (regarding duty of a private landowner abutting a public sidewalk). Ordinary care requires that the owner `do no affirmative act that will create an unsafe condition in the public way fronting his property.' Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. at 393, 118 So.2d at 729."
Id. at 204.
The defendants supported their summary judgment motion with affidavits of the hospital construction manager, the construction superintendent, and the construction foreman; those affidavits indicated that the plywood was placed over the valve as a temporary cover until the City of Huntsville delivered the permanent cover. The affidavits further stated that "to the best of their knowledge, it was not foreseeable that a wind would pick up the plywood and [cause it to] hit the plaintiff."
The defendants argue that "[t]he Hospital could not, as a matter of law, reasonably have anticipated that a sudden storm would cause a sixty pound object ... to be lifted from the ground and blown into the street"; however, they offer no evidence that the wind that caused Mr. Bradford's injury was unprecedented for that area and time, and, therefore, unforeseeable. Although they do not specifically use the term in their argument, the defendants basically argue that the wind constituted an "act of God" that they could not have foreseen. While the evidence in the record indicates that the conditions on the date of the injury were "blowy" or perhaps even severe, the defendants offered no evidence that the wind was of such strength that it constituted, as a matter of law, the sole proximate cause of Mr. Bradford's injury.
"In Louisville & N.R.R. v. Finlay, 237 Ala. 116, 185 So. 904 (1939), this Court stated that an act of God occurs only when there exists `the "intervention of such an extraordinary, violent and destructive agent, as by its very nature raises a presumption that no human means could resist its effect."' The Court added:
"`The expression "act of God" has been employed in various and broad senses by the authorities, such as an "extraordinary convulsion of nature or a direct visitation of the elements, against which the aids of science and skill are of no avail," or an "accident produced by physical causes which are irresistible," and other such expressions of like nature.'
237 Ala. at 118, 185 So. at 905. The Supreme Court of Mississippi held that:
"`No one is liable for an injury proximately caused by an act of God, which is an injury due directly and exclusively to natural causes without human intervention, and which could not have been prevented by the exercise of reasonable care and foresight. But an act which may be prevented by the exercise of ordinary care is not an act of God which would immunize a tort-feasor from liability.'

City of Jackson v. Brummett, 224 Miss. 501, 80 So.2d 827, 829 (1955)."
Hill Air of Gadsden, Inc. v. Marshall, 526 So.2d 15, 16-17 (Ala.1988). See also General Motors Corp. v. Edwards, 482 So.2d 1176, 1194-95 (Ala.1985). The defendants did not make a prima facie showing that there was no genuine issue of material fact; therefore, the burden did not shift to the Bradfords to offer substantial evidence in support of their negligence claim. Graveman, 607 So.2d at 202-03, citing Ala.Code 1975, § 12-21-12, and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Thus, as to the plaintiffs' negligence claim, a jury question is presented as to whether Mr. Bradford's injury was the result of negligence on the part of the Hospital and Universal *867 in failing to properly secure or fasten the plywood sheets over the opening or was an unforeseeable event that occurred as a result of an intervening act of God.
The judgment is affirmed as to the wantonness claim and the breach of contract claim; it is reversed as to the negligence claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
HOUSTON, Justice (concurring in the result).
I find no Alabama case involving an injury resulting from being struck by a wind-blown object. Other courts have recognized that the wind is inherently unpredictable and have required something more than the mere failure to secure objects weighing "about 60 pounds" before there is liability for injury caused by an object that is "gone with the wind."[1]Azoltovic v. George A. Fuller Co., 42 A.D.2d 543, 345 N.Y.S.2d 14 (1973). See Stabnick v. Williams Patrol Service, 151 Mich.App. 331, 390 N.W.2d 657 (1986); Resag v. Washington National Insurance Co., 90 Ill.App.3d 971, 46 Ill.Dec. 385, 414 N.E.2d 107 (1980).
I consider this a fact-specific case, because the hospital and the construction company had no prior warning of an approaching windstorm. I would dissent if I thought that the effect of the majority's holding was that when an object weighing "about 60 pounds" located on a landowner's property is lifted by a wind and propelled into a pedestrian using a right-of-way adjoining the landowner's property, it becomes a question for the trier of fact as to whether the landowner had a duty to secure the object so that it could not be lifted by the wind. If that were the holding, then Alabamians would have a duty to buckle down their porch furniture, their patio plants, their grills, their garden tools, and the myriad of objects on their porches or in their yards, because it would become a fact question as to whether a landowner should have secured these objects weighing "about 60 pounds" if a freak windstorm occurs and lifts one of them and propels it into the property or person of another.
In my opinion, the legal reasoning in Azoltovic is more persuasive than that in the majority opinion in this case. Therefore, I concur in the result.
NOTES
[1] Ernest Dowson, "Non Sum Qualis Eram."