

IN THE

# Court of Appeals of Indiana

Harjit Kaur, Individually, and as the Special Administrator of the Estate of Harvail Singh Dhillon, Deceased,

*Appellant-Plaintiff*

v.

Amazon, Inc., et al.

*Appellees-Defendants.*

FILED

Sep 27 2024, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

September 27, 2024

Court of Appeals Case No.
23A-CT-2059

Appeal from the Hamilton Superior Court

The Honorable J. Richard Campbell, Judge

Trial Court Cause No.
29D04-2212-CT-10006

**Opinion by Chief Judge Altice**
Judge Bailey concurs.
Judge Mathias concurs with separate opinion.

**Altice, Chief Judge.**

This wrongful death action arises from an incident on October 20, 2022, where Harvail Singh Dhillon was struck and killed by an oncoming truck after Dhillon stepped out of his tractor-trailer truck onto a county road. Dhillon was en route to a fulfillment center operated by Amazon, Inc. (Amazon) and owned by CF Mount Comfort DST (collectively, Amazon) to deliver goods to the center.

Harjit Kaur—Dhillon's widow—(the Estate) filed an amended wrongful death complaint[1] against Amazon, alleging negligent maintenance, design, and control of the fulfillment center's entrances. The Estate further alleged that Amazon knew that the layout of its entrances and lack of lighting and defective signage on its premises routinely endangered arriving truck drivers by causing them to become confused and exit their trucks on the public road across from the facility.

Amazon filed a motion for judgment on the pleadings pursuant to Ind. Trial Rule 12(C), arguing that the Estate's allegations failed to establish that Amazon owed a duty to Dhillon and that any negligence on Amazon's part was not the proximate cause of Dhillon's death. Following a hearing, the trial court granted Amazon's motion, concluding that Amazon owed no duty to Dhillon under Indiana law.

The Estate appeals, arguing that granting Amazon's motion for judgment on the pleadings was error because it sufficiently alleged that Amazon had a duty

---

[1] The trial court dismissed the Estate's initial complaint without prejudice.

to protect Dhillon from being struck by a third-party motorist. We reverse and remand for further proceedings consistent with this opinion.

## Facts & Procedural History[2]

[5] The facts, as set forth in the Estate's amended complaint, are as follows: In October 2022, Amazon contacted Dhillon, an independent contractor/truck driver, about delivering goods to its fulfillment center in Greenfield. The fulfillment center has three entrances that are accessible from County Road 300 North that runs along the south side of the center. When a motorist approaches the facility from the west on County Road 300 North, he encounters two entrances to the facility along the north side of the county road that are marked with "no truck" signs. *Appellants' Appendix Vol. II* at 36. There was no signage posted at either of the two entrances to inform incoming truck drivers as to where they were expected to enter the facility. The third entrance when approaching from the west is the one to be used by delivery drivers, and it is about 500 feet east of the fulfillment center building.

[6] At approximately 6:40 a.m. on October 20, 2022, while it was still dark, Dhillon approached the fulfillment center from the west on 300 North to make

---

[2] We heard oral argument in this case and in *Oukbu v. Amazon, et. al,* No. 24A-CT-00770, which presents the same issue, on August 20, 2024, in the Court of Appeals courtroom at the Indiana Statehouse. We commend counsel on the excellent quality of their written and oral advocacy. We hand down this case contemporaneously with *Oukbu.*

a delivery. After Dhillon encountered the second "no truck" entrance, he became confused, as he could not discern any other entrances serving the facility. As a result, Dhillon stopped his truck on County Road 300 North across from the fulfillment facility, presumably to determine where he could access the premises. This was Dhillon's first trip to the fulfillment center, and Amazon had not provided him with any instructions as to where to enter the premises. Amazon only gave Dhillon the facility's address and a delivery time.

[7] Immediately after Dhillon stepped out of his truck and onto the road, he was struck and killed by a fuel tanker owned and operated by William McPhearson, an employee of I.C.I. Transport, LLC (I.C.I.), that was traveling eastbound on County Road 300 North. Forty-eight days prior to this incident, another truck driver, Mahari Oukbu—the appellant in the appeal that we also decide today—was struck by a vehicle after stopping his truck on the roadway across from the fulfillment center. Like Dhillon, Oukbu was an independent contractor traveling to the fulfillment center for the first time and drove past Amazon's westernmost entryway after noticing the small "no trucks" signs at the entrances. *Appellant's Appendix Vol. II* at 33.

[8] Bruce Gibson, the driver who struck Oukbu, stated to a Greenfield police officer at the scene, that "you see these truck drivers all the time stopping and getting out here." *Id.* at 34. Gibson further explained that on his way to work each morning, he would notice truck drivers get out at the same spot "all the time" because they were lost and did not know where to go. *Id.* An Amazon

employee told a Greenfield police officer that he sees "these lost truck drivers get out of their trucks at this spot every day." *Id.* at 35.

[9] On March 20, 2023, the Estate filed an amended complaint for wrongful death against Amazon,[3] alleging that Dhillon was an invitee to whom Amazon owed a duty of reasonable care, and that Amazon breached that duty because the lighting and defective and confusing signage at the fulfillment center created a hazard to delivery drivers. The Estate alleged that Amazon's signage was confusing because the first two entrances with the "no truck" signs were not sufficiently illuminated, and there was no additional signage directing delivery drivers to the proper entrance. *Id.* at 37. Thus, the Estate claimed that the confusion Amazon created for the truck drivers posed "an imminent danger" to all of Amazon's invitees as well as to the general public "when these trucks suddenly stopped and parked, blocking much of the street in the dark." *Id.* at 36.

[10] After Amazon answered the complaint and denied the allegations, it moved for judgment on the pleadings pursuant to T.R. 12(C), arguing that the Estate's allegations failed to establish that Amazon owed a duty to Dhillon. The trial court granted Amazon's motion on June 23, 2023, determining that "Amazon had no duty to guard against injury to [Dhillon] from the negligent acts of

---

[3] While the amended complaint included negligence counts against McPhearson and I.C.I., neither participates in this appeal.

someone over whom Amazon had no control and when the injury occurred off Amazon's premises." *Appellant's Appendix Vol. II* at 21.

[11] In arriving at that result, the trial court rejected the Estate's reliance on *Lutheran Hosp. of Ind., Inc. v. Blaser,* 634 N.E.2d 864, 870 (Ind. Ct. App. 1994), where a panel of this court determined that the defendant hospital was liable to the plaintiff for her injuries after a vehicle struck her in the parking lot driveway because the hospital permitted pedestrians and vehicles to use the designated "exit" as an entrance to the lot with no safeguards or warnings. The trial court observed that unlike the circumstances in *Lutheran Hospital,* the Estate did not allege that Amazon created a hazardous condition on its premises and/or that it exerted any control over McPhearson or County Road 300 North.

[12] The Estate now appeals.

## Standard of Review

[13] A motion for judgment on the pleadings pursuant to T.R. 12(C) attacks the legal sufficiency of the pleadings. *See Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 (Ind. Ct. App. 2001), *trans. denied*. In reviewing a trial court's decision on a motion for judgment on the pleadings, we conduct a de novo review. *Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010). We only examine the pleadings and any facts of which we may take judicial notice, with all well-pleaded material facts alleged in the complaint taken as admitted. *Waldrip v. Waldrip,* 976 N.E.2d 102, 110 (Ind. Ct. App. 2012).

The test to be applied when ruling on a T.R. 12(C) motion is whether, in a light most favorable to the non-moving party and "with every intendment regarded in his favor, the complaint is sufficient to constitute *any valid claim*." *Brugh v. Milestone Contractors,* 202 N.E.3d 1091, 1094 (Ind. Ct. App. 2023), *trans. denied* (emphasis added). We will affirm the trial court's judgment on a T.R. 12(C) motion when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Veolia Water Indianapolis, LLC v. Nat'l Tr. Ins. Co.,* 3 N.E.3d 1, 5 (Ind. 2014).

## Discussion and Decision

The Estate maintains that the trial court erred in granting Amazon's T.R. 12 (C) motion because its complaint alleged that Amazon owed a duty to Dhillon—its business invitee—to protect him from the foreseeable harm and the dangerous conditions that Amazon created with the defective lighting and signage on its premises. The Estate asserts that its complaint sufficiently alleged that Amazon knew that the dangerous condition confused truck driver invitees causing them to stop and get out of their truck in the road each day. The Estate also claims that it pled sufficient facts to establish that Amazon's breach of duty proximately caused Dhillon's death.

A negligence claim is established by showing (1) a duty owed by the defendant to conform its conduct to a standard of care arising from its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by

the breach of that duty. *City of Indianapolis v. Johnson,* 736 N.E.2d 295, 297 (Ind. Ct. App. 2000). Absent a duty owed to the plaintiff by the defendant, there can be no actionable negligence. *Wiley v. ESG Sec. Inc.*, 187 N.E.3d 267, 272 (Ind. Ct. App. 2022), *trans. denied*.

[17] In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred. *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). Generally, a landowner is not liable to its business invitees for the acts of a third-party over whom it had no control, and when the injuries do not occur on the landowner's property. *State v. Flanigan,* 489 N.E.2d 1216, 1218 (Ind. Ct. App. 1986), *trans. denied*. On the other hand, liability is not limited to the area owned or leased "but extends to adjoining areas which harbor a dangerous condition that is created by the owner's . . . use of such areas." *Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 773 (Ind. Ct. App. 1986), *trans. denied*. A duty of reasonable care may be extended beyond the business premises "when it is reasonable for invitees to believe the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation." *Id.* at 772. Moreover, a person may not use his land in such a way that would injure the interests of those not on his land, including users of public ways. *Justice v. CSX Transp., Inc.,* 908 F.2d 119, 123 (7th Cir. 1990) (applying Indiana law). When the activities conducted on the business premises affect the risk of injury off the premises, "the landowner may be under

a duty to correct the condition or guard against foreseeable injuries." *Lutheran Hosp.,* 634 N.E.2d at 870.

[18] Amazon asserts that our Supreme Court's opinion in *Reece v. Tyson Fresh Meats, Inc.,* 173 N.E.3d 1031, 1041 (Ind. 2021), controls the outcome here. In *Reece,* a motorcyclist traveling on a public roadway adjacent to Tyson's property suffered catastrophic injuries after colliding with a motorist. The motorcyclist's guardian brought an action against the other driver and Tyson, claiming that Tyson was negligent "for allowing grass to grow so high on their property that it blocked the view of the roadway." *Id.* at 1033. In affirming the trial court's grant of summary judgment for Tyson, our Supreme Court held that "*under the facts of this case,* Tyson owed no duty to the traveling public. The *visual obstruction* was completely contained on its land and did not visit itself upon the adjacent roadway." *Id.* at 1041 (emphases added). In so holding, the *Reece* Court adopted a bright line rule, providing that when the condition on the land is contained on the land and does not create a physical intrusion that visits itself on the adjacent roadway, the landowner does not owe a duty to travelers on the roadway. *See id.* at 1034, 1040-41. The *Reece* holding was specifically confined "to *visual obstructions* that do not come in contact with traveling motorists." *Id.* at 1041 (emphasis added).

[19] Unlike *Reece,* the Estate did not allege the presence of tall grass or any other visual obstruction coming from Amazon's property. Rather, the Estate pled facts that Amazon's duty to Dhillon arose from alleged defective lighting and confusing signage at the entrances to the fulfillment center. Moreover, *Reece*

involved a landowner's duty to passing motorists on an adjacent highway, and the Court specifically rejected the argument that such a duty should be the same as that owed to a business invitee. *See id.* at 1040 n.3. In short, *Reece* is not applicable in these circumstances.

[20] We find the facts and circumstances in this case more akin to those in *Lutheran Hospital*. In that case, the plaintiff—Blaser—was a hospital visitor who was struck by a vehicle in the hospital's parking lot driveway. The evidence established that the parking lot was located across the street from the hospital and when Blaser was struck, "she was walking up the driveway of the parking lot." 634 N.E.2d at 867.

[21] The hospital appealed a jury award in Blaser's favor, contending that the trial court erred when it found that the hospital had a duty to Blaser when she was struck by a car in the parking lot's driveway, "a right-of-way over which [the hospital] allege[d] it did not control and only had a duty to maintain." *Id.* at 868. A panel of this court rejected the hospital's argument and determined that it owed a duty to Blaser beyond the boundaries of its premises because it created a dangerous condition on its property, that pedestrians gravitated to and were not discouraged from using. *See id.* at 869-70.

[22] In arriving at this result, the *Lutheran Hospital* Court noted the following:

- There was a circular drive in front of the hospital building with a well-lit canopied entrance and a guard booth.

- The exit driveway to the parking lot was directly across from the building's entrance.

- The hospital encouraged pedestrians to use the exit lane of the parking lot by crossing the public roadway mid-block, rather than at the marked crosswalks.

- There was a guardhouse on the parking lot side of the road with an arrow pointing into it—though it was only meant to be an entrance for delivery trucks. The public had no way of knowing this until they were pulling into the exit driveway or were right alongside it.

In examining these facts, the *Lutheran Hospital* Court determined that the hospital's funneling of pedestrian and vehicular traffic into the driveway of the parking lot "*created a dangerous condition that the hospital was either cognizant of or should have reasonably foreseen.*" *Id.* at 869 (emphasis added). It was observed that

> By allowing pedestrians and automobiles to use the 'exit' driveway as an entrance to the parking lot without adequate safeguards or warning to either, Lutheran used its premises, the parking lot, in such a way to affect the risk of injury of its invitees off its premises, the 'exit' driveway. Because Lutheran knew the manner in which its invitees, both pedestrians and drivers, customarily used the driveway of the 'exit' in connection with its invitation, it is under a duty to correct the dangerous conditions and guard against foreseeable injuries.

*Id.* at 870. The *Lutheran Hospital* Court also pointed out that the hospital knew of the danger because it had "assured the city engineer

that it would discourage people from using the canopy entrance doors as an entry and exit to the hospital." *Id.* Nothing had been done, however, "towards this end or to direct pedestrians to the crosswalks." *Id.*

[24] Similar to the circumstances in *Lutheran Hospital*, the Estate pled facts demonstrating that Amazon knew or should have known that truck drivers attempting to enter its premises were confused about where to enter to make their deliveries. Indeed, the facility's confusing layout, signage, and lack of lighting often prompted arriving truck drivers to exit their trucks on the county road in hopes of learning where and how to enter the fulfillment center. Moreover, the Estate's allegations demonstrate that Dhillon's death was foreseeable to Amazon because another delivery truck driver had been struck by a motorist at the same location and under similar circumstances less than two months earlier. The driver of that vehicle told investigating police officers that truck drivers routinely stop where Dhillon was struck and "get out" of their trucks because they were confused and did not know where to enter the fulfillment center. *Appellant's Appendix Vol. II* at 34. Additionally, an Amazon employee told investigating officers that he sees lost truck drivers get out of their trucks at that location "every day." *Id.* at 35.

[25] Given these circumstances, the Estate has sufficiently alleged that Amazon used its premises in a manner that harbored a dangerous condition off its own premises, i.e., on the county road, that affected the risk of injury to others. And in accordance with the reasoning advanced in *Lutheran Hospital,* the Estate properly alleged that Amazon had a duty to provide a "safe and suitable means of ingress and egress," including a "warning of or protection from danger. . . ." *Lutheran Hospital,* 634 N.E.2d at 869. Put another way, the Estate sufficiently alleged that Amazon's lack of signage and its failure to direct delivery truck drivers where to enter the fulfillment center created confusion and a dangerous condition.

[26] In addition to the rationale advanced in *Lutheran Hospital,* we also find Restatement (Third) of Torts, § 54 (2012) (Section 54) instructive. Section 54 provides that

> (a) The possessor of land has a duty of reasonable care for *artificial conditions or conduct on the land that poses a risk of physical harm to persons or property not on the land*.

> (b) For natural conditions on land that pose a risk of physical harm to persons or property not on the land, the possessor of the land

>> (1) has a duty of reasonable care if the land is commercial; otherwise
>> (2) has a duty of reasonable care only if the possessor knows of the risk or if the risk is obvious.

> (c) Unless Subsection (b) applies, a possessor of land adjacent to a public walkway has no duty under this Chapter with regard to a risk posed by

the condition of the walkway to pedestrians or others if the land possessor did not create the risk.

(Emphasis added).

[27] While not specifically adopted in Indiana—yet accepted in other jurisdictions—Section 54 pertains to the duty of reasonable care for conduct on one's land that creates risks to those not on the premises. For example, in *Bradford v. Universal Const. Co., Inc.*, 644 So.2d 864, 866 (Ala. 1994), it was held that a landowner's duty extends beyond the premises where the land abuts public ways or sidewalks, and ordinary care requires that the owner not perform any affirmative act that will create an unsafe condition in the public way fronting his property. [4]

[28] Here, the Estate alleged that Amazon controlled the way that delivery drivers enter the premises and that it placed an artificial hazard, i.e., the "no trucks" signage on its premises. The Estate also pled facts establishing that Amazon had direct knowledge of the hazard it created and that it took no action to

---

[4] *See also Stephens v. Bashas' Inc.,* 186 Ariz. 427, 430 (Ct. App. 1996) (holding that a delivery driver struck by a passing vehicle while waiting on an adjacent street to enter the owner's premises to deliver goods was a business invitee to whom the owner owed a duty to maintain its premises in a reasonably safe condition, including the obligation to provide reasonably safe means of ingress and egress); *Ollar v. Spakes,* 601 S.W.2d 868, 870 (Ark. 1980) (when an owner or operator of a business learns or should have learned of a dangerous condition existing adjacent to his property and fails to attempt to correct the condition or warn the invitees of such danger, he is liable for negligence); *Fleming v. Garnett*, 646 A.2d 1308, 1313 (Conn. 1994) (owner of a commercial driveway adjacent to public road owed a duty to passing motorists because he realized or should have realized that tractor trailers exiting his property and entering the highway via neighboring driveway would temporarily block both lanes of traffic); *Langen v. Rushton*, 360 N.W.2d 270, 274 (Mich. Ct. App. 1984) (shopping center owner owed a duty in developing and maintaining the facility, including the parking lot and exits, to consider risks to motorists on adjacent highways); *Boggs ex rel. Boggs v. Lay,* 164 S.W.3d 4, 17 (Mo. App. E.D. 2005) (observing that a duty is imposed on a property owner that artificially creates, through negligence, or affirmative action, a condition on the public road that makes passage unsafe), *trans. denied.*

provide instructions for its approaching truck drivers. In short, the Estate's complaint was sufficient to demonstrate that Amazon owed a duty of reasonable care to Dhillon, and that Amazon's actions—or inactions—created a condition that made passage unsafe on the abutting public road.

[29] For these reasons, we conclude that the trial court erred in granting Amazon's motion for judgment on the pleadings. We therefore reverse and remand this cause to the trial court for further proceedings consistent with this opinion.

[30] Reversed and remanded.

Bailey, J., concurs.

Mathias, J., concurs with separate opinion.

ATTORNEYS FOR APPELLANT

Richard Cook
Brandon Yosha
Louis Buddy Yosha
Bryan C. Tisch
Alexander C. Trueblood
Indianapolis, Indiana


ATTORNEYS FOR APPELLEES

Phillip G. Rizzo
Edward M. O'Brien
Cyrus G. Dutton, IV
Louisville, Kentucky



Barath S. Raman
Edmund L. Abel
J. Neal Bowling
Indianapolis, Indiana


ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION

Charles Hubley
Chase Wilson
Indianapolis, Indiana

**Mathias, Judge, concurring.**

[31]     I write separately only to say that I would adopt the Restatement (Third) of Torts § 54 (2012) to resolve the issues presented in this case, and I urge our colleagues on the Supreme Court to do so.